Andino OLGUIN ARROYO,
et als., Plaintiffs,

v.

STATE ELECTION BOARD;
et als., Defendants.

No. Civ. 98–2297 (JP).

United States District Court,
D. Puerto Rico.

Nov. 30, 1998.

**184**

Pedro J. Varela–Fernández, Cayey, P.R., for plaintiff.

Gustavo A. Gelpí–Abarca, Department of Justice, Federal Litigation Division, San Juan, P.R., for defendant.

## ORDER

PIERAS, Senior District Judge.

### I. Introduction

The Court has before it Defendant's Notice of Removal (**Docket No. 1**), Plaintiff's Request for Summary Remand and Expedited Disposition (**Docket No. 3**), and Defendant's Motion Submitting Additional Grounds for Federal Jurisdiction (**Docket No. 4**).

Plaintiffs filed the above captioned action in the Court of First Instance, Superior Division, San Juan Part. According to their Complaint, Plaintiffs bring this action on their own behalf, and on behalf of 300,000 Puerto Rico residents who, like the named Plaintiffs, are otherwise eligible voters that have been excluded from the electoral registry. Plaintiffs and the 300,000 residents are not permitted to vote in the December 13 status plebiscite because they failed to meet the November 3, 1998 registration deadline. (Defs' Notice of Removal at Ex B–1.) Plaintiffs challenge the constitutionality of Defendants' acts surrounding the setting of the November 3, 1998 deadline.

Among their several allegations, Plaintiffs stress that the passing of Hurricane Georges in late September 1998 and subsequent heavy rainfall in several areas of the island made it extremely difficult to meet the voter registration deadline. In addition, Plaintiffs claim that they were unable to learn about the various status formulae, which were included for the first time in this plebiscite. Plaintiffs allege that by setting the deadline so far in advance of the plebiscite and by not changing it especially after the havoc caused by Hurricane Georges, Defendants did not afford Plaintiffs sufficient time to register and learn about the registration process and the status options in the referendum. (Defs' Notice of Removal at Ex B–1, ¶¶ 3, 6, 7, & 9) According to Plaintiffs, these acts constituted several violations of Plaintiff's civil rights, namely their right to vote, freedom of association and expression, due process and equal protection. Plaintiffs seek injunctive relief and a declaratory order finding Defendants' actions unconstitutional.

On November 18, 1998, Defendants filed a Notice of Removal with the Court. Defendants allege that this case arises under the laws of the United States. *See* 28 U.S.C. §§ 1331(b), 1441(a)(b), & 1446(a)(b); *see also Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). According to Defendants, even though Plaintiffs ground their claims on state-law causes of action, namely the Puerto Rico Civil Rights Act, the election laws, and the Puerto Rico Constitution, a

substantial federal question appears on the face of the Complaint. *See, Smith v. Kansas City Title & Trust,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921).

## II. Discussion

As this is a case of removal to federal court, the Court is asked to determine whether federal question jurisdiction exists in the case at issue. Defining the scope of federal question jurisdiction is not a novel question, but rather it is a matter that has been discussed in the case law and scholarship for many years. The Court believes, nonetheless, that to rule on the issue it confronts it must briefly discuss the standard that has evolved in several Supreme Court cases dealing with federal question jurisdiction.

Unlike state courts, federal courts are courts of limited jurisdiction. *See* U.S. Const. art. III, cl. 2. Thus, federal courts can only hear certain types of cases, which include "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. When a civil action is filed in state court, a defendant may remove the action if it presents a claim arising under the laws or Constitution of the United States. *See* 28 U.S.C. § 1441(b). Determining what is a civil action arising under the Constitution or laws of the United States is no simple task. This question has challenged judges, attorneys, and scholars for many years. The challenge posed by this question is largely due to the lack of a "clear test for deciding when a case 'arises under' federal law for purposes of [28 U.S.C.] § 1331." Erwin Chemerinsky, FEDERAL JURISDICTION, § 5.2.3, p. 263 (2nd ed.1994). As our sister District of Massachusetts has expressed, "there is no 'single . . . definition' of [the phrase "arising under"]; rather the [phrase] 'masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.'" *Therrien v. Hamilton,* 881 F.Supp. 76, 80 (citations omitted). The U.S. Supreme Court has dealt with this issue on numerous occasions.

In *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987 (1916), the Supreme Court, in an opinion by Justice Holmes, formulated a test to determine when a case arises under federal law. Justice Holmes stated that a "suit arises under the law that creates the cause of action." *Id.* at 260, 36 S.Ct. 585. Thus, if the suit arises under a federal cause of action, the federal court shall have jurisdiction over the case.

Justice Holmes' test, however, is not a test of exclusion. It does not stand for the proposition that if the suit arises under a state cause of action, the federal court will necessarily lack jurisdiction. Rather, it is a test of inclusion, because in some instances federal question jurisdiction may exist in the absence of a federal cause of action.

The Supreme Court expanded the scope of federal question jurisdiction stating that federal jurisdiction exists "where it appears from the bill or statement of the plaintiff that the right to relief depends upon the construction or application of the Constitution or laws of the United States." *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 199, 41 S.Ct. 243, 65 L.Ed. 577 (1921). In *Smith,* a shareholder sued to enjoin the defendant from purchasing bonds issued by the federal government in violation of the Constitution. Although this case was premised on a state cause of action, the Court found that a federal question was an integral component of the complaint. This interpretation, however, seems inconsistent with the Supreme Court's earlier decision in *Moore v. Chesapeake & Ohio Railway,* 291 U.S. 205, 54 S.Ct. 402, 78 L.Ed. 755 (1934), which found that "it does not follow that a suit brought under the state statute which . . . brings within the purview of the statute a breach of duty imposed by federal statute, should be regarded as a suit arising under the laws of the United States. . . ." Faced with this inconsistency, the Court reconciled these two decisions in *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). Justice Stevens, writing for the majority, stated that *Smith* and *Moore* were distinguishable in that there were different federal interests involved in those cases. While in *Smith* the federal issue "was the constitutionality of a federal

statute, in *Moore* the 'violation of the federal standard as an element of state tort recovery did not change the state tort nature of the action.'" Erwin Chemerinsky, FEDERAL JURISDICTION at 272 *citing Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. at 816, 106 S.Ct. 3229. In sum, *Merrell Dow* added another prong to the *Smith* ·rule, namely that there must be an important federal interest involved.

■ Having· this analysis in mind, the Court proceeds to determine whether it has jurisdiction over Plaintiff's action. In a broad and brief analysis, this case boils down to the December 13, 1998 status plebiscite which "necessarily involves the relationship between the United States and Puerto Rico and an examination of the federal laws that established Puerto Rico as a [territory] of the United States." *New Progressive Party v. Hernandez Colon*, 779 F.Supp. 646, 650 (D.Puerto Rico 1991). Thus, any challenge to the plebiscite will undeniably have some bearing on a federal issue: the relationship between Puerto Rico and the federal government. The Court believes that there is an important federal interest in assuring that any action, such as setting registration deadlines, surrounding an event that potentially affects the relationship between the federal government and Puerto Rico complies with the civil rights guarantees of the U.S. Constitution.

In only citing to the Puerto Rico Constitution and local law, the Court believes that Plaintiffs underestimate the federal interest and the scope of the federal question in this plebiscite. *See Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir.1997). "Several commentators have suggested that [the Supreme Court's] § 1331 decisions can best be understood as an evaluation of the nature of the federal interest at stake." *Id.* at 1056 *citing Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. at 812 n. 12, 106 S.Ct. 3229. In evaluating the federal interest at issue, the Court believes that this case poses important and interesting questions regarding the relations of the federal government and Puerto Rico.

■ In addressing the issue more specifically, Plaintiffs' Complaint on its face demonstrates that the essence of their claims involve alleged violations of speech, expression, due process, and equal protection. These rights and freedoms are guaranteed by the First and Fourteenth Amendments of the U.S. Constitution, the violation of which is actionable under 42 U.S.C. § 1983. Although Plaintiff's Complaint only· cites to state law claims, which are also guaranteed by the P.R. Constitution, the "heart" of the allegations in Plaintiffs' claims asserts federal law claims. It is evident that this Complaint constitutes an exercise of avoiding federal jurisdiction. Plaintiff may not avoid federal jurisdiction by simply omitting federal questions in its pleading. *See Christianson, et al. v. Colt Industries Operating Corp.*, 486 U.S. 800, 821, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *Therrien v. Hamilton*, 881 F.Supp. at 82 (citing *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Although a court should give some deference to a plaintiff's chosen forum, "it should not allow a plaintiff to deny a defendant a federal forum simply by labeling his federal issues as state causes of action." *Id.* at 82. The ·Court believes that the true essence of Plaintiff's claims are federal, even though they opt to characterize them as state law claims. For this reason, the Court finds that it has jurisdiction over the case at issue.

Furthermore, the claims presented in this case pose issues that are of an intrinsically federal nature. The purpose of this plebiscite is to send a message to Congress regarding the will of the People of Puerto Rico. Its repercussions will define the future of the Island's relationship with the federal government. The clarity and precision of the message will hinge in large part on the way the election is administered. For this reason, any decision that a court makes in this case could very well affect the result of the election and, thus, the relationship between Puerto Rico and the federal government, a purely federal issue. For the reasons stated above, the Court finds that although the stated causes of action do not arise under federal law, the outcome of this litigation will require examining issues of federal law.

Moreover, paragraph 11 of the Complaint asserts that Plaintiffs' constitutional rights are being violated because setting the date so far ahead of the plebiscite prevented Plaintiffs from learning the details of the various status options, which are being offered for the first time in a local plebiscite. Plaintiffs do not assert any federal causes of action, and they limit themselves to local constitutional and statutory provisions. Yet, to determine whether Plaintiffs are entitled to relief, several questions which are substantially intertwined and related to federal law must be addressed, namely whether the status options set forth in the ballot can be included in such ballot. If these options are not viable, presenting these options will be detrimental to the electorate and the democratic process. This question requires deep analysis into the powers of the Puerto Rico government over defining political status formulae. "It is worth noting that only federal law, rather than local law, has defined the juridical status of the island...." *Popular Democratic Party, et al. v. Commonwealth of Puerto Rico, et al.*, 24 F.Supp.2d 184, No. 98-2004 (D. Puerto Rico Oct. 13, 1998). If Defendants could include these options, then the Court must determine whether the deadline constitutes a violation of Plaintiff's civil rights, and whether Defendant's actions are encroaching Plaintiff's right to express their will regarding the status of Puerto Rico with the federal government.

 "The presence of even one claim 'arising under' federal law is sufficient to satisfy the requirement that the case be within the original jurisdiction of the district court for removal." *Wisconsin Department of Corrections v. Schacht*, —— U.S. ——, 118 S.Ct. 2047, 2051, 141 L.Ed.2d 364 (1998). Thus, because there are one or more federal claims, the entire case is removable to federal court.

Thus, the Court finds that it has jurisdiction over the above captioned case. The Court hereby **GRANTS** Defendant's Notice of Removal. Parties are reminded that removed cases are governed by the Federal Rules of Civil Procedure. *See Willy v. Coastal Corp.* 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). The Court hereby **ORDERS** Defendants to file with the Court

all records and proceedings filed in state court on or before **December 4, 1998**. *See Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285 (11th Cir.1985). Defendants **SHALL** answer or otherwise plead in accordance with Rule 81(c) of the Fed. R.Civ.P.

IT IS SO ORDERED.