Leonardo Ramos HERNANDEZ, Plaintiff,

v.

**STATE ELECTIONS BOARD,** Commonwealth of Puerto Rico, Defendants.

No. Civ. 98–2349 (PG).

United States District Court, D. Puerto Rico.

Dec. 9, 1998.

Leonardo Ramos–Hernández, Barranquitas, PR, pro se.

Gustavo A. Gelpí, Dept. of Justice, San Juan PR, Pedro A. Delgado–Hernández, Hato Rey, PR, for Defendants.

## *OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

Before this Court is the Notice of Removal filed by the Commonwealth of Puerto Rico on December 3, 1998. Codefendant State Elections Board (SEB) has joined the removal via separate motion filed on December 4, 1998.[1] Plaintiff, who brings this action *pro se*, agrees in his Motion to Join in Removal, filed on December 4, 1998, that this case arises under federal law. Because federal courts, however, are courts of limited jurisdiction, this Court shall nonetheless make its *motu propio* determination of whether the matter before it "arises under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331.

### I. Background

Plaintiff filed the instant action pursuant to 16 L.P.R.A. § 3016a[2] before the Court of First Instance of Puerto Rico, seeking judicial review of a decision of the State Elections Board (SEB) denying his request that a "write-in" column be provided to electors and that each write-in status proposal be accounted for in the upcoming Puerto Rico status plebiscite to be held on December 13, 1998, pursuant to Law No. 249 of August 17, 1998. Ultimately, plaintiff contends, Law No. 249 is unconstitutional, should he not be permitted to effectively cast his write-in vote, since it precludes him from exercising his right to vote, freedom of expression and association.

At Paragraph 6 of the Complaint plaintiff states that in an October 22, 1998, request to the SEB, he provided an extensive explanation of the status alternative he intends to

---

**1.** It is proper for a defendant in a multidefendant case to remove the case initially, and subsequently the other defendants join in the removal. *See Ford v. New United Motors Mfg., Inc.,* 857 F.Supp. 707, 708 n.. 3 (D.C.Cal.1994); *Ogletree v. Barnes,* 851 F.Supp. 184, 186–7 (D.C.Pa.1994); *Thompson v. Louisville Ladder Corp.,* 835 F.Supp. 336, 337 (D.C.Tex.1993); *Martin Oil Co. v. Philadelphia Life Ins. Co.,* 827 F.Supp. 1236, 1237 (D.W.Va.1993); 16 *Moore's Federal Practice* § 107.11[1][c] (3rd ed.1998).

**2.** Section 3016(a) provides in pertinent part: "[a]ny party affected by a resolution, ruling or order of the Commonwealth Commission may ... appeal to the Superior Court by submitting a writ for review."

vote for.[3] Said status alternative provides both an internal and autonomous local government for the island composed of three branches, and a novel political relationship with the United States. Plaintiff envisions a permanent union between both governments, in which Puerto Rico shall be subject to the plenary power of Congress under the constitutional provision for admission of new states into the Union. Puerto Rico will no longer be authorized to tax imports from the mainland, but nonetheless shall maintain its fiscal autonomy. The federal government shall continue to exercise its customs powers, and federal cabotage laws shall remain in vigor in the island.

Plaintiff's novel and elaborate status definition further provides that the government of Puerto Rico have six resident commissioners in Congress, with equal standing to congressmen in the United States House of Representatives. Whenever a federal law is enacted, and the same adversely affects Puerto Rico, it shall be placed on a "fast track" process so that Congress either amend the same or not. Plaintiff also demands a constitutional amendment to the effect that residents of Puerto Rico be allowed to vote for the President and Vice President of the United States. Finally, plaintiff contends that the constitutional doctrine that Puerto Rico is an unincorporated territory of the United States is void and unacceptable.

On November 6, 1998, Superior Court Judge Carmen Rita Vélez Borrás ordered the Attorney General of Puerto Rico to appear as a party to the instant action.[4] On November 13, 1998, the Commonwealth filed a Notice of Removal of this action to this United States District Court, contending that plaintiff's claims arose under federal law.[5] See Civil No. 98–2281(SEC).[6]

In an Opinion and order of November 25, 1998, Judge Casellas remanded the case to commonwealth court, finding that plaintiff's claims were strictly local in nature and that any federal question that could arise in this case would do so by way of a defense and therefore the case was not removable.

On November 30, 1998—subsequent to the case being remanded—plaintiff filed four pleadings before the Commonwealth Court of First Instance: a motion for summary judgment, a sworn declaration, an informative motion, and a motion adding intervening party.[7] At pages 3–4 of his motion for summary judgment, plaintiff describes in a detailed and meticulous manner the procedure he requires in order for his write-in vote to be adequately accounted for. In a nutshell, plaintiff will go to the Electoral College with his status proposal in hand, and will inform college officials of his intention to cast a write-in vote. The Electoral College will then recuse his vote on the basis that his status proposal is not considered bona fide. A recusal procedure will follow, in which a court, exercising review jurisdiction, shall have to determine whether his status proposal is valid prior to ordering that his vote be adjudicated and counted.

At page 6 of the motion for summary judgment, plaintiff claims that Law No. 249 precludes him from freely exercising the right to vote by disentitling him to cast a dissenting vote. He further states that even if his proposed write-in procedure is recognized by a court, the same cannot be implemented because Article 32 of Law No. 249 provides that any change, alteration or modification of the status petitions in the Law will result in the same ceasing to have effect.

---

3. Plaintiff's complaint and October 22, 1998, letter to the SEB (incorporated by reference in the complaint), were included by defendants in the Notice of Removal as Exhibits A and B, respectively.

4. P.R.Civ.P. 21.3 provides that in actions where the constitutionality of a Commonwealth law is challenged, the Attorney General shall be permitted to intervene on behalf of the Commonwealth. Judge Vélez Borrás' order is included with the removal notice as Exhibit C.

5. The SEB joined in the removal via separate motion filed on November 16, 1998.

6. The case was originally assigned to Judge Raymond L. Acosta, who recused himself on November 19, 1998. The case was then randomly assigned to Judge Salvador E. Casellas.

7. These motions are included as Exhibits D, E, F and G to the removal notice.

## II. Law No. 249

Law 249 of August 17, 1998, is a vehicle provided by the Puerto Rico Legislative Assembly to allow the People of Puerto Rico to express their preferences concerning the ultimate political status of Puerto Rico and thereby petition Congress for a redress of grievances resulting from Puerto Rico's current status as a territory subject to plenary congressional power under the Territorial Clause of the United States Constitution, U.S. Const., art. IV, § 3, cl. 2.

Law 249 provides for the voters of Puerto Rico to express themselves on the status alternatives for the Commonwealth of Puerto Rico in a plebiscite to be held on December 13, 1998. In said event, the voters are provided four basic options: (i) entry of Puerto Rico into the United States as a sovereign state on equal footing with the other fifty states, with American citizenship guaranteed under the federal Constitution; (ii) continued plenary Congressional control over Puerto Rico under the Territorial Clause of the federal Constitution, with a federal delegation of power to the government of Puerto Rico to deal with internal affairs, and with American citizenship continuing to be conferred by federal statute; (iii) separate sovereignty for Puerto Rico, accompanied by a treaty of association with the United States; and (iv) separate sovereignty. In addition, those who wish to vote, yet find all of the listed options unacceptable, are expressly permitted to cast a vote for "none of the above".

The status options identified in Law 249 also reflect the basic political reality that any change in Puerto Rico's political status would require approval by the Congress of the United States. See Law No. 249, Statement of Motives. The "Statement of Motives" contained in Law No. 249 therefore refers specifically to various Congressional actions pertaining to possible changes in Puerto Rico's status and to the futility of voting on status options that are not "viable, under both constitutional and international law, as well as on the basis of the existing will in Congress and the White House." Id.

The certified results of the December 13, 1998, status plebiscite shall be forwarded by the Governor of Puerto Rico to both the President and Congress of the United States. See Law No. 249, Art. 29.

## III. Propriety of Removal following a Remand

In his motion for summary judgment filed before the Puerto Rico Court of First Instance on November 30, 1998, plaintiff has characterized his allegations so as to raise a claim under the "Constitution, laws and treaties of the United States," therefore giving rise to federal jurisdiction under 28 U.S.C. § 1331. Consequently, and as discussed *infra*, the pleadings, filed in commonwealth court subsequent to Judge Casellas' remand order, reveal that plaintiff is indeed asserting a cause of action based on federal law, hence removable to this Court. See 28 U.S.C. § 1446(b); *Leffall v. Dallas Independent School Dist.*, 28 F.3d 521, 525 (5th Cir.1994); 14 A. Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3732, 519–21 (1985). See also *Lovern v. General Motors Corp.*, 121 F.3d 160 (4th Cir.1997) (removal under 28 U.S.C. § 1332 proper 88 days after service of complaint where notice filed within 30 days of defendant's receipt of documents that provided notice of existence of federal question).

The fact that Judge Casellas previously remanded the instant case based on his finding that the original complaint and pleadings did not state a federal cause of action does not preclude defendant from presently removing the case pursuant to 28 U.S.C. § 1446(b) based on pleadings filed subsequent to the remand. See, e.g., *Katonah v. USAir, Inc.*, 876 F.Supp. 984, 986–7 (N.D.Ill. 1995) (holding that denied removal may be reopened by new information with a new 30-day period).

## IV. Legal Analysis

The Supreme Court has held that federal jurisdiction exists when a plaintiff grounds his action on state law, yet a substantial federal question appears on the face of the plaintiff's pleadings. See *Smith v. Kansas City Title & Trust*, 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). This holding is equally applicable to cases removed from

state to federal court. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 814 n. 12, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *American Policyholders Ins. Co. v. Nyacol Products, Inc.*, 989 F.2d 1256, 1263 (1st Cir.1993). *See also* Arthur R. Miller, *Artful Pleading: A Doctrine in Search of Definition*, 76 Tex.L.Rev. 1781, 1787 (1998).

Federal courts have in the past found federal jurisdiction over state law-based claims where the federal issue raised therein is an important one involving the rights and obligations of the federal government to another government, be it that of a state, territory, Indian tribe or foreign nation. *See, e.g., Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1055–56 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 2319, 141 L.Ed.2d 694 (1998); *Torres v. Southern Peru Copper Co.*, 113 F.3d 540, 543 (5th Cir.1997); *Grynberg Production Corp. v. British Gas, p.l.c.*, 817 F.Supp. 1338, 1356 (E.D.Tex.1993). More recently, the issue of Puerto Rico's juridical status has been found to raise a federal question. *See Popular Democratic Party v. Commonwealth of Puerto Rico*, 24 F.Supp.2d 184 (D.P.R.1998), *petition for writ of mandamus denied*, (November 9, 1998).

 The plaintiff's pleadings, viewed in the context that the results of the December 13 status plebiscite shall be transmitted to the President and Congress of the United States, raise important federal implications regarding the relationship between the United States and the Commonwealth to Puerto Rico.[8] "The purpose of this plebiscite is to send a message to Congress regarding the will of the People of Puerto Rico. Its repercussions will define the future of the Island's relationship with the federal government.

The clarity and precision of the message will hinge in large part on the way the election is administered." *Olguin Arroyo v. State Election Board*, 30 F.Supp.2d 183 (opinion and order of November 30, 1998). Consequently, the Court holds that federal jurisdiction exists over the controversy at bar.

It is important to highlight once again the fact that the status alternatives provided by Law No. 249 are those options that are "viable under both constitutional and international law, as well as on the basis of the existing will in Congress and the White House." *See* Law No. 249, Statement of Motives. Thus, whether plaintiff's proposed status alternative, to begin with, meets these criteria also poses an important federal question to which only federal law can provide the answer to. *See Popular Democratic Party v. Commonwealth of Puerto Rico, supra.*

Additionally, plaintiff's contention that Law No. 249 precludes him from exercising his right to vote constitutes a violation of his freedom of speech and expression guaranteed by the First and Fourteenth Amendments to the United States Constitution. Such a violation is actionable under 42 U.S.C. § 1983.[9] If a claim pleaded by plaintiff as a state cause of action is in reality federal in nature, a federal court must recharacterize the complaint to reflect the reality and affirm the removal. *BIW Deceived v. Local S6*, 132 F.3d 824, 831 (1st Cir.1997) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). *See also Olguin Arroyo v. State Election Board, supra* (characterizing claims involving freedom of expression and speech in challenge to

---

**8.** The importance of the relationship between the United States and Puerto Rico was evidenced in the past Congress. The United States House of Representatives voted to enact H.R.856 (105th Congress), known as the "United States–Puerto Rico Political Status Act," which calls for a plebiscite in Puerto Rico leading potentially to either statehood or independence for Puerto Rico, or for a continuation of the status quo. Although the United States Senate did not act on a parallel measure, on September 17, 1998, it passed a unanimous resolution recognizing the right of Puerto Rico citizens to express their view on the island's future political status, and that Congress is empowered to make the ultimate decision concerning the relationship between the United States and Puerto Rico. *See* S.Res. No. 279 (105th Cong.2d Sess.).

**9.** The presence of a potential Eleventh Amendment bar with respect to a removed claim does not deprive a federal court of its jurisdiction under 28 U.S.C. § 1331. *Wisconsin Department of Corrections v. Schacht*, —— U.S. ——, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998). The Court notes that plaintiff's constitutional challenge to Law No. 249 only prays for declaratory and injunctive relief against the Commonwealth and SEB, and not monetary damages.

Law No. 249 as federal claims); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3722 at 276 (1985) ("the plaintiff's failure to make specific reference in the complaint to a source of law that is clearly applicable will not prevent removal"); Fallon, Jr. et al., *Hart & Weschler's the Federal Courts and the Federal System* 949 (4th ed.1996) ("if the plaintiff's claim, albeit cast as a state-law claim, is itself really a federal claim, removal will be permitted").

■ One final matter warrants brief discussion. In *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997), the Supreme Court held that administrative state law claims brought for judicial review before a state court could be removed to federal court on the basis of federal question jurisdiction. The Court stated that even though state administrative review statute creates a party's causes of action, the case still "arises under" the laws of the United States if the right to relief under state law requires resolution of a substantial question of federal law. *Id.* at 529. In the case at bar, Puerto Rico law, 16 L.P.R.A. § 3016a, creates the cause of action under which plaintiff grounds his claims. However, an examination of the pleadings demonstrates that the remedies he seeks implicate important federal interests and questions of law.

**WHEREFORE,** the Court **GRANTS** the defendants' Notice of Removal and plaintiff's Motion to Join in Removal.

**IT IS SO ORDERED.**