# WISCONSIN DEPARTMENT OF CORRECTIONS
## ET AL. *v.* SCHACHT

No. 97–461.   Argued April 20, 1998—Decided June 22, 1998

382

BREYER, J., delivered the opinion for a unanimous Court. KENNEDY, J., filed a concurring opinion, *post,* p. 393.

*Richard Briles Moriarty,* Assistant Attorney General of Wisconsin, argued the cause for petitioners. With him on the briefs was *James E. Doyle,* Attorney General.

*David E. Lasker* argued the cause and filed a brief for respondent.*

JUSTICE BREYER delivered the opinion of the Court.

The question before us is whether defendants in a case filed in a state court, with claims "arising under" federal law, can remove that case to federal court—where some claims, made against a State, are subject to an Eleventh Amendment bar. We conclude that the defendants can remove the case to a federal court and that the court can decide the nonbarred claims.

I

In 1993, the Wisconsin Department of Corrections dismissed Keith Schacht, a prison guard, for stealing items from the Oakhill Correctional Institution, a state prison. In January 1996, Schacht filed a complaint in state court against the Department and several of its employees, both in their "personal" and in their "official" capacities. The complaint, in several different claims, alleged that the Department and its employees had deprived Schacht of "liberty" and "property" without "due process of law," thereby violating the Federal Constitution and civil rights laws. U. S. Const.,

---

*A brief of *amici curiae* urging reversal was filed for the State of Indiana et al. by *Jeffrey A. Modisett*, Attorney General of Indiana, and *Jon Laramore, Geoffrey Slaughter*, and *Anthony Scott Chinn*, Deputy Attorneys General, and by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *Grant Woods* of Arizona, *Robert A. Butterworth* of Florida, *Thurbert E. Baker* of Georgia, *Margery S. Bronster* of Hawaii, *James E. Ryan* of Illinois, *J. Joseph Curran, Jr.*, of Maryland, *Scott Harshbarger* of Massachusetts, *Frank J. Kelley* of Michigan, *Mike Moore* of Mississippi, *Joseph P. Mazurek* of Montana, *Philip T. McLaughlin* of New Hampshire, *Frankie Sue Del Papa* of Nevada, *Dennis C. Vacco* of New York, *Heidi Heitkamp* of North Dakota, *Betty D. Montgomery* of Ohio, *John Knox Walkup* of Tennessee, *Dan Morales* of Texas, *Jan Graham* of Utah, *William H. Sorrell* of Vermont, and *William U. Hill* of Wyoming.

Amdt. 14, § 1; Rev. Stat. § 1979, 42 U. S. C. § 1983. The defendants immediately removed the case to federal court.

The defendants' answer, filed in federal court, in part raised as a "defense" that the "eleventh amendment to the United States Constitution, and the doctrine of sovereign immunity, bars any claim under 42 U. S. C. § 1983 against" the State itself, namely, the "defendant Wisconsin Department of Corrections [and] against any of the named defendants in their official capacities." Answer and Defenses, App. 14–15. See *Kentucky* v. *Graham*, 473 U. S. 159, 165–167, and n. 14 (1985) (suit for damages against state officer in official capacity is barred by the Eleventh Amendment); *Alabama* v. *Pugh*, 438 U. S. 781, 782 (1978) *(per curiam)* (suit against state agency is barred by the Eleventh Amendment).

After further proceedings, the Federal District Court considered those claims that were not against the State, that is, the claims against the individual defendants in their "personal capacit[ies]." It concluded as to those claims that, even if Schacht's factual allegations were true, Schacht had received the process that was his "due," and his dismissal did not violate the Fourteenth Amendment. No. 96–C–122–S (WD Wis., Sept. 13, 1996), App. 31–34. It therefore granted the defendants' motion for summary judgment with respect to those claims. *Id.*, at 34.

The federal court also considered the defendants' motion to dismiss those claims filed against the State, *i. e.*, the claims against the Department of Corrections and its employees in their "official capacities." The District Court granted the motion, stating:

> "Plaintiff agrees his claims for money damages are barred [by the Eleventh Amendment] but pursues his claims for injunctive relief. Plaintiff does not, however, request injunctive relief in his complaint . . . . Defendants' motion to dismiss plaintiff's claims against the Wisconsin Department of Corrections and the individual

defendants in their official capacities will be granted."
*Id.*, at 30.

Schacht appealed. He did not assert that the District Court was wrong to have dismissed the claims against the State. He argued only that the court's disposition of the "personal capacity" claims, *i. e.*, the grant of summary judgment, was legally erroneous. During the appeal, the Court of Appeals for the Seventh Circuit itself raised the question whether the removal from state to federal court had been legally permissible. See 116 F. 3d 1151, 1153 (1997). After supplemental briefing, the Court of Appeals concluded that removal had been improper and the federal courts lacked jurisdiction over Schacht's case. *Ibid.*

The Court of Appeals pointed out that Schacht's original state-court complaint, while presenting only claims arising under federal law, asserted some of those claims against the State. *Id.*, at 1152. The court added that the Eleventh Amendment, as interpreted by this Court, prohibited the assertion of those claims in federal court. *Ibid.* (citing U. S. Const., Amdt. 11; *Hans* v. *Louisiana,* 134 U. S 1, 10 (1890)). The Court of Appeals concluded that the presence of even one such claim in an otherwise removable case deprived the federal courts of removal jurisdiction over the entire case. 116 F. 3d, at 1152–1153 (relying on *Frances J.* v. *Wright,* 19 F. 3d 337, 341 (CA7 1994)). Hence, it held, the District Court's judgment must be vacated and the entire case returned to the state court for the litigation to begin all over again. 116 F. 3d, at 1153–1154.

We granted certiorari to review the Seventh Circuit's view of the matter, and the similar views taken in several earlier cases upon which that court relied, see, *e. g., Frances J., supra; McKay* v. *Boyd Constr. Co.,* 769 F. 2d 1084 (CA5 1985). Those decisions conflict with the decisions of other Courts of Appeals. See, *e. g., Kruse* v. *Hawai'i,* 68 F. 3d 331 (CA9 1995); *Henry* v. *Metropolitan Sewer Dist.,* 922 F. 2d 332 (CA6 1990); see also *Silver* v. *Baggiano,* 804 F. 2d 1211 (CA11

1986). We now conclude, contrary to the Seventh Circuit, that the presence in an otherwise removable case of a claim that the Eleventh Amendment may bar does not destroy removal jurisdiction that would otherwise exist.

## II

The governing provision of the federal removal statute authorizes a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U. S. C. § 1441(a). See also Judiciary Act of 1789, § 12, 1 Stat. 79–80 (original removal statute); Act of Mar. 3, 1887, 24 Stat. 552, corrected by Act of Aug. 13, 1888, 25 Stat. 433 (setting forth removal power in terms roughly similar to present law). The language of this section obviously permits the removal of a case that contains only claims that "arise under" federal law. That is because a federal statute explicitly grants the federal courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U. S. C. § 1331. This case, however, requires us to consider what happens if one, or more, of those claims is subject to an Eleventh Amendment bar. Does that circumstance destroy removal jurisdiction that would otherwise exist?

The primary argument that it does destroy removal jurisdiction has several parts. First, the argument distinguishes a case with federal-law claims that include one or more Eleventh Amendment claims from a case with both federal-law claims and state-law claims. See 116 F. 3d, at 1152. We have suggested that the presence of even one claim "arising under" federal law is sufficient to satisfy the requirement that the case be within the original jurisdiction of the district court for removal. See *Chicago* v. *International College of Surgeons*, 522 U. S. 156, 163–166 (1997). In *Chicago*, for example, we wrote:

"[The] federal claims suffice to make the actions 'civil actions' within the 'original jurisdiction' of the district

courts for purposes of removal. . . . Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *Id.*, at 166 (citation omitted).

See also *Metropolitan Life Ins. Co.* v. *Taylor*, 481 U. S. 58 (1987); *Franchise Tax Bd. of Cal.* v. *Construction Laborers Vacation Trust for Southern Cal.*, 463 U. S. 1, 7–12 (1983).

This statement, however, and others like it, appear in the context of cases involving both federal-law and state-law claims. And the Seventh Circuit found a significant difference between such cases and cases in which the Eleventh Amendment applies to some of the federal-law claims. See 116 F. 3d, at 1152. In the former cases the state-law claims fall within the supplemental jurisdiction of the federal courts. Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U. S. C. § 1367(a); see *Chicago, supra*, at 164–166. Cf. § 1441(c) (explicitly providing discretionary removal jurisdiction over entire case where federal claim is accompanied by a "separate and independent" state-law claim). In the latter cases, the comparable claims do not fall within the federal courts' "pendent" jurisdiction, but rather, it is argued, are claims that the Eleventh Amendment prohibits the federal courts from deciding.

Second, the argument emphasizes the "jurisdictional" nature of this difference. The Seventh Circuit, for example, said: "Claims barred by sovereign immunity stand on different footing than other claims that are not independently removable, because of the affirmative limitation on jurisdiction imposed by the sovereign immunity doctrines." 116 F. 3d, at 1152 (citing *Frances J., supra*, at 340–341, and n. 4). That is to say, according to the Court of Appeals, neither the law

permitting supplemental jurisdiction, nor any other law, see, e. g., § 1441(c), gives the federal court the power to decide a claim barred by the Eleventh Amendment. See *Pennhurst State School and Hospital* v. *Halderman*, 465 U. S. 89, 121 (1984); *Frances J.*, 19 F. 3d, at 341.

Third, the argument looks to removal based upon "diversity jurisdiction," 28 U. S. C. § 1332, for analogical authority that leads to its conclusion, namely, that this "jurisdictional" problem is so serious that the presence of even one Eleventh-Amendment-barred claim destroys removal jurisdiction with respect to *all* claims (*i. e.*, the entire "case"). See, *e. g.*, 116 F. 3d, at 1152 (citing *Frances J.*, *supra*, at 341); *McKay* v. *Boyd Constr. Co.*, 769 F. 2d, at 1086–1087 (discussing analogy to removal based on diversity jurisdiction). A case falls within the federal district court's "original" diversity "jurisdiction" only if diversity of citizenship among the parties is complete, *i. e.*, only if there is no plaintiff and no defendant who are citizens of the same State. See *Carden* v. *Arkoma Associates*, 494 U. S. 185, 187 (1990); *Strawbridge* v. *Curtiss*, 3 Cranch 267 (1806). But cf. Fed. Rule Civ. Proc. 21; *Newman-Green, Inc.* v. *Alfonzo-Larrain*, 490 U. S. 826, 832–838 (1989) (Rule 21 authorizes courts to dismiss nondiverse defendants in order to cure jurisdictional defects, instead of the entire case). Consequently, this Court has indicated that a defendant cannot remove a case that contains some claims against "diverse" defendants as long as there is one claim brought against a "nondiverse" defendant. See *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61, 68–69 (1996). If the analogy is appropriate, then, an Eleventh Amendment bar with respect to one claim would prevent removal of a case that contains some "arising under" claims, which, had they stood alone, would have permitted removal. *Frances J.*, *supra*, at 341; *McKay*, *supra*, at 1087.

We find the analogy unconvincing. This case differs significantly from a diversity case with respect to a federal dis-

trict court's *original* jurisdiction. The presence of the non-diverse party automatically destroys original jurisdiction: No party need assert the defect. No party can waive the defect or consent to jurisdiction. *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee,* 456 U. S. 694, 702 (1982); *People's Bank* v. *Calhoun,* 102 U. S. 256, 260–261 (1880). No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own. *Insurance Corp. of Ireland, supra,* at 702; *Mansfield, C. & L. M. R. Co.* v. *Swan,* 111 U. S. 379, 382 (1884).

The Eleventh Amendment, however, does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense. *Atascadero State Hospital* v. *Scanlon,* 473 U. S. 234, 241 (1985); *Clark* v. *Barnard,* 108 U. S. 436, 447 (1883). Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it. See *Patsy* v. *Board of Regents of Fla.,* 457 U. S. 496, 515, n. 19 (1982).

These differences help to explain why governing authority has treated the defects differently for purposes of original jurisdiction. Where original jurisdiction rests upon Congress' statutory grant of "diversity jurisdiction," this Court has held that one claim against one nondiverse defendant destroys that original jurisdiction. See, *e. g., Newman-Green, Inc., supra,* at 829 ("When a plaintiff sues more than one defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for *each* defendant or face dismissal"). But, where original jurisdiction rests upon the Statute's grant of "arising under" jurisdiction, the Court has assumed that the presence of a potential Eleventh Amendment bar with respect to one claim, has not destroyed original jurisdiction over the case. *E. g., Pugh,* 438 U. S., at 782; *Papasan* v. *Allain,* 478 U. S. 265 (1986). See also

*Henry,* 922 F. 2d, at 338–339; *Roberts* v. *College of the Desert,* 870 F. 2d 1411, 1415 (CA9 1988). Cf. *Pennhurst, supra,* at 121 (suggesting that courts must analyze the applicability of the Eleventh Amendment to each claim rather than case as whole). Since a federal court would have original jurisdiction to hear this case had Schacht originally filed it there, the defendants may remove the case from state to federal courts. See § 1441(a).

Other considerations further undermine the analogy. For example, for purposes of removal jurisdiction, we are to look at the case as of the time it was filed in state court—prior to the time the defendants filed their answer in federal court. See, *e. g., St. Paul Mercury Indemnity Co.* v. *Red Cab Co.,* 303 U. S. 283, 291 (1938) ("[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal, since the defendant must file his petition before the time for answer or forever lose his right to remove"). As of that time, a case that involved "incomplete diversity" automatically would have fallen outside the federal courts' "original jurisdiction." By contrast, as of that time, the State's participation as a defendant would not automatically have placed the case outside the federal courts' jurisdictional authority. That is because the underlying relevant condition (the federal courts' effort to assert jurisdiction over an objecting State) could not have existed prior to removal, see, *e. g., Maine* v. *Thiboutot,* 448 U. S. 1, 9, n. 7 (1980), and because the State might not have asserted the defense in federal court, but could have decided instead to defend on the merits. (Here, for example, the State, while not waiving its Eleventh Amendment defense, has asserted in the alternative that Schacht could not state a § 1983 claim against the State. See *Will* v. *Michigan Dept. of State Police,* 491 U. S. 58, 64 (1989).)

These differences between "diversity" and "Eleventh Amendment" cases with respect to original and removal jurisdiction are sufficient to destroy the analogy upon which

the lower court opinions rest. A case such as this one is more closely analogous to cases in which a *later* event, say, the change in the citizenship of a party or a subsequent reduction of the amount at issue below jurisdictional levels, destroys previously existing jurisdiction. In such cases, a federal court will *keep* a removed case. See *St. Paul Mercury Indemnity Co., supra,* at 293–295; *Phelps* v. *Oaks,* 117 U. S. 236, 240–241 (1886); *Kanouse* v. *Martin,* 15 How. 198, 207–210 (1854). See also *Carnegie-Mellon Univ.* v. *Cohill,* 484 U. S. 343, 350, and n. 7 (1988) (federal court may exercise jurisdiction over remaining state-law claims under supplemental jurisdiction, if all federal-law claims are eliminated before trial). Here, too, at the time of removal, this case fell within the "original jurisdiction" of the federal courts. The State's later invocation of the Eleventh Amendment placed the particular *claim* beyond the power of the federal courts to decide, but it did not destroy removal jurisdiction over the entire case.

## III

We must consider one further argument that respondent has made. That argument is not based upon an analogy but upon the specific language of a particular statutory provision, 28 U. S. C. § 1447(c). The provision says: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Ibid.* Respondent argues that, at least after the State asserted its Eleventh Amendment defense, the federal court "lacked subject matter jurisdiction." Brief for Respondent 19. He points out that the statute says that the entire "*case* shall be remanded*" to the state court. That is to say, he contends that, if the "district court lacks subject matter jurisdiction" over *any* claim, then *every* claim, *i. e.,* the entire "case," must be "remanded" to the state court.

Even making the assumption that Eleventh Amendment immunity is a matter of subject-matter jurisdiction—a question we have not decided—we reject respondent's argument

because we do not read the statute in this way. An ordinary reading of the language indicates that the statute refers to an instance in which a federal court "lacks subject matter jurisdiction" over a "case," and not simply over one claim within a case. Cf. § 1441(c) (permitting "the entire case" to be removed or remanded, when one or more "non-removable claims or causes of action" is joined with a federal question "claim or cause of action"). Conceivably, one might also read the statute's reference to "case" to include a claim within a case as well as the entire case. But neither reading helps Schacht. The former reading would make the provision inapplicable here; the latter would make it applicable, but requires remand only of the relevant claims, and not the entire case as Schacht contends.

Nor does the statute's purpose favor Schacht's interpretation. The statutory section that contains the provision deals, not with the question of what is removable, but with the procedures that a federal court is to follow after removal occurs. It is entitled: "Procedure after removal generally." § 1447. In substance, the section differentiates between removals that are defective because of lack of subject-matter jurisdiction and removals that are defective for some other reason, e. g., because the removal took place after relevant time limits had expired. For the latter kind of case, there must be a motion to remand filed no later than 30 days after the filing of the removal notice. § 1447(c). For the former kind of case, remand may take place without such a motion and at any time. Ibid. The provision, then, helps to specify a procedural difference that flows from a difference in the kinds of reasons that could lead to a remand. That objective is irrelevant to the kind of problem presented in this case.

We repeat our conclusion: A State's proper assertion of an Eleventh Amendment bar after removal means that the federal court cannot hear the barred claim. But that circumstance does not destroy removal jurisdiction over the remaining claims in the case before us. A federal court can

proceed to hear those other claims, and the District Court did not err in doing so.

For these reasons, the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KENNEDY, concurring.

In joining the opinion of the Court, I write to observe we have neither reached nor considered the argument that, by giving its express consent to removal of the case from state court, Wisconsin waived its Eleventh Amendment immunity. Insofar as the record shows, this issue was not raised in the proceedings below; and it was not part of the briefs filed here or the arguments made to the Court. The question should be considered, however, in some later case.

Removal requires the consent of all of the defendants. See, *e. g.*, *Chicago, R. I. & P. R. Co.* v. *Martin*, 178 U. S. 245, 248 (1900); 14A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §3731, p. 504 (2d ed. 1985). Here the State consented to removal but then registered a prompt objection to the jurisdiction of the United States District Court over the claim against it. By electing to remove, the State created the difficult problem confronted in the Court of Appeals and now here. This is the situation in which law usually says a party must accept the consequences of its own acts. It would seem simple enough to rule that once a State consents to removal, it may not turn around and say the Eleventh Amendment bars the jurisdiction of the federal court. Consent to removal, it can be argued, is a waiver of the Eleventh Amendment immunity.

Given the latitude accorded the States in raising the immunity at a late stage, however, a rule of waiver may not be all that obvious. The Court has said the Eleventh Amendment bar may be asserted for the first time on appeal, so a State which is sued in federal court does not waive the Eleventh Amendment simply by appearing and defending on the mer-

its. See *Florida Dept. of State* v. *Treasure Salvors, Inc.*, 458 U. S. 670, 683, n. 18 (1982) (plurality opinion); see also *Calderon* v. *Ashmus*, 523 U. S. 740, 745, n. 2 (1998); *Pennhurst State School and Hospital* v. *Halderman*, 465 U. S. 89, 99, n. 8 (1984); *Edelman* v. *Jordan*, 415 U. S. 651, 678 (1974); *Ford Motor Co.* v. *Department of Treasury of Ind.*, 323 U. S. 459, 467 (1945).

I have my doubts about the propriety of this rule. In permitting the belated assertion of the Eleventh Amendment bar, we allow States to proceed to judgment without facing any real risk of adverse consequences. Should the State prevail, the plaintiff would be bound by principles of res judicata. If the State were to lose, however, it could void the entire judgment simply by asserting its immunity on appeal.

This departure from the usual rules of waiver stems from the hybrid nature of the jurisdictional bar erected by the Eleventh Amendment. In certain respects, the immunity bears substantial similarity to personal jurisdiction requirements, since it can be waived and courts need not raise the issue *sua sponte*. See *Patsy* v. *Board of Regents of Fla.*, 457 U. S. 496, 516, n. 19 (1982). Permitting the immunity to be raised at any stage of the proceedings, in contrast, is more consistent with regarding the Eleventh Amendment as a limit on the federal courts' subject-matter jurisdiction. See *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee*, 456 U. S. 694, 702–704 (1982) (comparing personal jurisdiction with subject-matter jurisdiction). We have noted the inconsistency. Although the text is framed in terms of the extent of the "Judicial power of the United States," U. S. Const., Amdt. 11, our precedents have treated the Eleventh Amendment as "enact[ing] a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter jurisdiction." *Idaho* v. *Coeur d'Alene Tribe of Idaho*, 521 U. S. 261, 267 (1997); see also E. Chemerinsky, Federal Jurisdiction § 7.6, p. 405 (2d ed. 1994) (noting that allowing waiver of the immunity "seems

inconsistent with viewing the Eleventh Amendment as a restriction on the federal courts' subject matter jurisdiction").

The Court could eliminate the unfairness by modifying our Eleventh Amendment jurisprudence to make it more consistent with our practice regarding personal jurisdiction. Under a rule inferring waiver from the failure to raise the objection at the outset of the proceedings, States would be prevented from gaining an unfair advantage. See Fed. Rule Civ. Proc. 12(h)(1).

We would not need to make this substantial revision to find waiver in the circumstances here, however. Even if appearing in federal court and defending on the merits is not sufficient to constitute a waiver, a different case may be presented when a State under no compulsion to appear in federal court voluntarily invokes its jurisdiction. As the Court recognized in *Gunter* v. *Atlantic Coast Line R. Co.*, 200 U. S. 273, 284 (1906), "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment."

An early decision of this Court applied this principle in holding that a State's voluntary intervention in a federal-court action to assert its own claim constituted a waiver of the Eleventh Amendment. *Clark* v. *Barnard*, 108 U. S. 436, 447–448 (1883); see also *Employees of Dept. of Public Health and Welfare of Mo.* v. *Department of Public Health and Welfare of Mo.*, 411 U. S. 279, 294, n. 10 (1973) (Marshall, J., concurring in result) (citing *Clark* v. *Barnard* with approval); *Petty* v. *Tennessee-Missouri Bridge Comm'n*, 359 U. S. 275, 276 (1959) (same); *Missouri* v. *Fiske*, 290 U. S. 18, 24–25 (1933) (same). The Court also found a waiver of the Eleventh Amendment when a State voluntarily appeared in bankruptcy court to file a claim against a common fund. *Gardner* v. *New Jersey*, 329 U. S. 565, 574 (1947). Since a State which is made a defendant to a state-court action is under no com-

pulsion to appear in federal court and, like any other defendant, has the unilateral right to block removal of the case, any appearance the State makes in federal court may well be regarded as voluntary in the same manner as the appearances which gave rise to the waivers in *Clark* and *Gardner.*

Some Courts of Appeals, following this reasoning, have recognized that consent to removal may constitute a waiver. *Newfield House, Inc.* v. *Massachusetts Dept. of Pub. Welfare,* 651 F. 2d 32, 36, n. 3 (CA1), cert. denied, 454 U. S. 1114 (1981); see also *Estate of Porter* v. *Illinois,* 36 F. 3d 684, 691 (CA7 1994); *Silver* v. *Baggiano,* 804 F. 2d 1211, 1214 (CA11 1986); *Gwinn Area Community Schools* v. *Michigan,* 741 F. 2d 840, 847 (CA6 1984). These cases have first inquired, however, whether state law authorized the attorneys representing the State to waive the Eleventh Amendment on its behalf. Petitioners cited this qualification when we raised the issue at oral argument in the instant case. This was also the Court's apparent concern in *Ford Motor Co.,* in which it held:

> "It is conceded by the respondents that if it is within the power of the administrative and executive officers of Indiana to waive the state's immunity, they have done so in this proceeding. The issue thus becomes one of their power under state law to do so. As this issue has not been determined by state courts, this Court must resort to the general policy of the state as expressed in its Constitution, statutes and decisions. Article 4, §24 of the Indiana Constitution provides:

> "'Provision may be made, by general law, for bringing suit against the State, as to all liabilities originating after the adoption of this Constitution; but no special act authorizing such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed.'

> "We interpret this provision as indicating a policy prohibiting state consent to suit in one particular case in

the absence of a general consent to suit in all similar causes of action. Since the state legislature may waive state immunity only by general law, it is not to be presumed in the absence of clear language to the contrary, that they conferred on administrative or executive officers discretionary power to grant or withhold consent in individual cases. . . . It would seem, therefore, that no properly authorized executive or administrative officer of the state has waived the state's immunity to suit in the federal courts." 323 U. S., at 467–469 (footnotes omitted).

See also *Sosna* v. *Iowa,* 419 U. S. 393, 396, n. 2 (1975).

Notwithstanding the quoted language from *Ford Motor Co.,* the absence of specific authorization, it seems to me, is not an insuperable obstacle to adopting a rule of waiver in every case where the State, through its attorneys, consents to removal from the state court to the federal court. If the States know or have reason to expect that removal will constitute a waiver, then it is easy enough to presume that an attorney authorized to represent the State can bind it to the jurisdiction of the federal court (for Eleventh Amendment purposes) by the consent to removal.

It is true as well that the Court's recent cases have disfavored constructive waivers of the Eleventh Amendment and have required the State's consent to suit be unequivocal. *Atascadero State Hospital* v. *Scanlon,* 473 U. S. 234, 246–247 (1985); *Edelman* v. *Jordan,* 415 U. S., at 673. The conduct which may give rise to the waiver in the instance of removal is far less equivocal than the conduct at issue in those cases, however. Here the State's consent amounted to a direct invocation of the jurisdiction of the federal courts, an act considerably more specific than the general participation in a federal program found insufficient in *Atascadero* and *Edelman.*

These questions should be explored. If it were demonstrated that a federal rule finding waiver of the Eleventh

Amendment when the State consents to removal would put States at some unfair tactical disadvantage, perhaps the waiver rule ought not to be embraced. I tend to doubt such consequences, however. Since the issue was not addressed either by the parties or the Court of Appeals, the proper course is for us to defer addressing the question until it is presented for our consideration, supported by full briefing and argument, in some later case.