**PACIFIC BELL, a California corporation, Plaintiff–Appellant,**

v.

**COOK TELECOM, INC., a California corporation, and the Commissioners of the California Public Utilities Commission, in their official capacity and not as individuals, Defendants–Appellees.**

**No. 99–15324.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1999

Filed Dec. 27, 1999

Michael K. Kellogg, Kellogg, Huber, Hansen, Todd & Evans, Washington, D.C., for the plaintiff-appellant.

David M. Wilson, Young, Vogl, Harlick, Wilson & Simpson, San Francisco, California; and Ida Passamonti, California Public Utilities Commission, San Francisco, California, for the defendants-appellees.

Jeffry A. Brueggeman, Denver, Colorado; Keith Townsend, Washington, D.C.; and Angela E. Giancarlo, Alexandria, Virginia, for the amici curiae.

Before: GOODWIN, SCHROEDER, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

This case presents a question of first impression in the circuit courts concerning the proper interpretation of certain sections of the Telecommunications Act of 1996: Can a paging company enter into "reciprocal compensation arrangements for the transport and termination of telecommunications"? The Federal Communications Commission (FCC) answers "yes." We hold that the relevant statutory provisions are ambiguous and that we must, therefore, defer to the interpretation offered by the FCC.

## STATUTORY BACKGROUND

### A. Local Competition

The Telecommunications Act of 1996, Pub.L. 104–104, 100 Stat. 56 (codified as scattered amendments to the Communications Act of 1934, 47 U.S.C. § 151 *et seq.*) (the Act) is designed to foster competition in local telecommunications markets. *See U.S. West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1116 (9th Cir. 1999) (petition for rehearing and petition for rehearing en banc filed Oct. 22, 1999); *In the Matter of Implementation of the Local Competition Provision in the Telecommunications Act of 1996*, 11 F.C.C.R. 15499 ¶ 1 (1996) (First Report and Order) ("In the new regulatory regime, [the FCC] and the states remove the outdated barriers that protect monopolies from competition and affirmatively promote efficient competition using tools forged by Congress."). The key provisions by which Congress sought to open local telecommunications markets to competition are 47 U.S.C. §§ 251 and 252.

Section 251, titled "Interconnection," imposes three tiers of duties on three different, statutorily defined categories of telecommunications-related entities, and also contains various ancillary provisions. The Act's broadest designation for a telecommunications-related entity is a "telecommunications carrier," which is "any provider of telecommunications services, [with

certain exceptions, not relevant here]." 47 U.S.C. § 153(44). "Telecommunications service," in turn, is defined as "the offering of telecommunications for a fee directly to the public ... regardless of the facilities used." 47 U.S.C. § 153(46). Finally, "[t]he term 'telecommunications' means the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C. § 153(43). Under those definitions, both Pacific Bell and Cook Telecom, Inc. (Cook), are "telecommunications carriers."

Under § 251(a), all telecommunications carriers are required "(1) to interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers; and (2) not to install network features, functions or capabilities that do not comply with [47 U.S.C. § 255, relating to access by the disabled, and 47 U.S.C. § 256, relating to technical 'interconnectivity' standards]." "Interconnection" is not defined in the Act, but the FCC defines it as "the linking of two networks for the mutual exchange of traffic." 47 C.F.R. § 51.5. Thus, § 251(a) imposes a duty on both Pacific Bell and Cook to link their networks, directly or indirectly, with those of other telecommunications carriers.

Section 251(b) imposes additional duties on entities designated as "local exchange carriers," commonly referred to as LECs. An LEC is "any person that is engaged in the provision of telephone exchange service or exchange access." 47 U.S.C. § 153(26). Although the definition of "telephone exchange service" is complex, see 47 U.S.C. § 153(47), it is clear that, at present, Pacific Bell is a local exchange carrier and that Cook is not.

At issue in this appeal is the duty imposed on each LEC by § 251(b)(5): "The duty to establish reciprocal compensation arrangements for the transport and termi-

nation of telecommunications." None of the critical terms-"reciprocal compensation arrangements," "transport," or "termination"-is defined in the Act.

Finally, § 251(c) imposes "additional obligations" on "incumbent local exchange carriers." "Incumbent" LECs are defined in the Act, as relevant here, to mean certain dominant carriers that were providing telephone service when the Act became law. See 47 U.S.C. § 251(h)(1). Pacific Bell is an incumbent LEC. Accordingly, § 251(c)(1) imposes on it the "duty to negotiate in good faith" with any "requesting telecommunications carrier" an agreement establishing terms and conditions for interconnection. 47 U.S.C. § 251(c)(1). Such agreements commonly are referred to as "interconnection agreements." See U.S. West Communications, 193 F.3d at 1116.

## B. Interconnection Agreements and the State Commissions

Section 252, titled "Procedures for negotiation, arbitration, and approval of agreements," delineates the respective roles of the carriers, the state commissions, and the state and federal courts in facilitating, approving, and reviewing interconnection agreements.

If interconnecting carriers are unable to negotiate a satisfactory agreement, see 47 U.S.C. § 252(a), either may petition the relevant state commission to arbitrate open issues, see 47 U.S.C. § 252(b). Once an agreement is reached, either through negotiation or arbitration, it must be submitted to the state commission for approval. See 47 U.S.C. § 252(e). Under § 252(e)(2)(B), the state commission may reject an arbitrated agreement only "if it finds that the agreement does not meet the requirements of [§ 251], including the regulations prescribed by the [FCC,] or the standards set forth in [§ 252(d) ]."[1]

---

**1.** By contrast, a *negotiated* agreement may be rejected only if it discriminates against a telecommunications carrier that did not partici-

pate in the negotiations, or is not consistent with the public interest, convenience, and necessity. *See* 47 U.S.C. § 252(e)(2)(A).

Finally, under the Act, "[n]o State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under [§ 252]." 47 U.S.C. § 252(e)(4). Section 252(e)(6) authorizes federal court review, however: "In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of § 251 [and § 252]."

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

As the district court observed, the underlying facts of this case are not disputed. Cook provides paging services in California and other Western states. Pacific Bell provides local telephone and other telecommunications services in California. The two carriers' respective telecommunications networks are physically interconnected.

When a Pacific Bell customer dials the telephone number assigned to a Cook paging unit, the call is routed to the designated Cook pager through one of two mechanisms used by Cook and Pacific Bell to interconnect. If the call is routed through a Type 1 interconnection, the paging call is passed to Cook's paging terminal (and then to the designated pager) through both a Pacific Bell tandem switch and a Pacific Bell end-office switch. If the paging call is routed through a Type 2 interconnection, Pacific Bell passes the call directly from Pacific Bell's tandem office to Cook's paging terminal.

When it receives a paging call, Cook's terminal determines whether the dialed number represents a valid Cook paging unit and, if it does, delivers "answer supervision" to Pacific Bell, technically indicating that a connection is open. The Pacific Bell customer may then receive verbal instructions from Cook on paging options

available. The paging party sends a verbal, alphanumeric, or electronic data message to Cook's terminal, which encodes the message and routes it to the designated paging unit via Cook's radio transmitter network. At some point during this process, in some cases before the page is actually transmitted to the designated paging unit, Cook's terminal disconnects the call.

Cook does not provide any two-way paging services and thus originates no calls for delivery to Pacific Bell's network.

### B. Procedural Background

#### 1. Arbitration Proceedings

In August 1996, after passage of the Act and release of the FCC's implementing order, Cook asked Pacific Bell to enter into interconnection negotiations pursuant to § 252(a)(1). Negotiations failed to produce a voluntary agreement. Cook petitioned the California Public Utilities Commission (CPUC) for arbitration pursuant to § 252(b). The central dispute presented to the arbitrator was whether Pacific Bell was required to negotiate a "reciprocal compensation arrangement" with Cook pursuant to § 251(b)(5).

After extended hearings, the CPUC arbitrator ruled in Pacific Bell's favor. The arbitrator reasoned that Cook, a one-way paging company that originated no traffic for termination on Pacific Bell's network, was not requesting a "reciprocal compensation arrangement" but, instead, was requesting a "one-way compensation arrangement." "[T]he plain meaning of section 251(b)(5)," explained the arbitrator, is that Pacific Bell "has a duty to establish a compensation arrangement for the transport and termination of telecommunications that is generally returned in kind, goes back and forth, and is mutual between [the parties]." Arbitrator's Report at 9–10 (Apr. 21, 1997). As a separate ground for decision, the arbitrator concluded that Cook does not "terminate" or "transport" telecommunications and,

therefore, that it was not entitled to reciprocal compensation under § 251(b)(5). That section imposes a duty to establish reciprocal compensation arrangements only "for the transport and termination of telecommunications."

Based on those determinations, the arbitrator ordered the parties to file with the CPUC an interconnection agreement that did not provide for payment of termination compensation by Pacific Bell to Cook.

## 2. *CPUC Proceedings*

On May 21, 1997, the CPUC rejected the submitted agreement "because it fails to provide for compensation to Cook for the costs that Cook incurs in terminating calls to its paging customers," in violation of §§ 251(b)(5) and 252(d)(2)(A)(i).

The CPUC observed that § 251(b)(5) governs compensation arrangements concerning termination of all "telecommunications" and that § 252(d)(2)(A)(i) entitles terminating "carriers" to recover their termination costs from originating "carriers." Those broad statutory terms support Cook's claim to reciprocal compensation: "We fail to discern any public policy that Congress intended to further by denying such compensation to one-way paging carriers when, at the same time, Congress went to such great lengths to grant such carriers the right to interconnect and compete on an equal footing under the Act." Interim Decision of the CPUC at 4 (May 21, 1997).

The CPUC bolstered its reading of the Act by noting that the FCC believed that one-way paging providers were entitled to reciprocal compensation under § 251(b)(5). Indeed, the CPUC observed that, in its order implementing these provisions of the Act, the FCC stated that "LECs are obligated, pursuant to section 251(b)(5) (and the corresponding pricing standards of section 252(d)(2)), to enter into reciprocal compensation arrangements with all CMRS [Commercial Mobile Radio Service] providers, *including paging providers,* for the transport and termination of traffic on

each other's networks." First Report and Order ¶ 1008 (emphasis added). The CPUC further cited the FCC's statement that "paging providers, as telecommunications carriers, are entitled to mutual compensation for the transport and termination of local traffic," *id.* ¶ 1092, and the FCC's command that state commissions employ a specific methodology when arbitrating rate disputes between LECs and paging providers, *see id.* ¶ 1093.

The CPUC also rejected Pacific Bell's contention that Cook does not "terminate" traffic: "When a caller dials a paging customer, the call is initially transported on the local exchange carrier's network, then handed off to the paging carrier for ultimate delivery to the called party." Interim Opinion of the CPUC at 5. The CPUC concluded that Cook's paging terminal was "an 'equivalent facility' to an end office switch" and that Cook was entitled to compensation for this termination. *Id.* at 6.

On rehearing, the CPUC further explained that its determination that Cook "terminated" telecommunications did not conflict with 47 C.F.R. § 51.701(d), despite the fact that the regulation states that "termination is the *switching* of local telecommunications traffic." (Emphasis added.) Pacific Bell argued that switching requires creation of a two-way open circuit between end-users and characterized the operation of Cook's paging service as creating no such continuous open communications path. The CPUC concluded that Pacific Bell's understanding of both switching and the nature of the telecommunications service provided by Cook was unduly restrictive: "Although Cook's paging service operates differently from the technology of an exchange carrier, such as Pacific Bell, there is no denying that Cook provides a telecommunications service and a termination function. If Cook were not providing termination for telecommunications, the paging calls of Pacific Bell's customers would not succeed in reaching the paged customer." Order Denying Applica-

tion By Pacific Bell for Rehearing at 4 (Sept. 24, 1997).

### 3. District Court Proceedings

In October 1997, after its petition for rehearing was denied by the CPUC, Pacific Bell filed this action against Cook and the Commissioners of the CPUC.[2] Limiting its review to the administrative record, the district court granted Cook's and the CPUC Commissioners' motions for summary judgment.

The district court reasoned that "[t]he Act requires only that the agreements be 'reciprocal' in that each carrier agrees to pay the other for the benefits it receives from the other carrier when the other carrier terminates a call that originates with the first carrier." The district court further concluded that Cook "terminated" telecommunications. Thus, the court held, "upon a *de novo* review of the CPUC's decision, that the CPUC did not err in finding that Cook is entitled to termination compensation under the Act. The CPUC's interpretation of §§ 251 and 252 is reasonable and consistent with the Act, the regulations, and the FCC's interpretations of the Act."

### STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *See Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir. 1998).

### ANALYSIS

### A. Cook Terminates Traffic

Congress did not define the term "termination" in the Act. The FCC has defined it, however: "For purposes of this subpart [concerning reciprocal compensation arrangements], termination is the switching of local telecommunications traffic at the terminating carrier's end office switch, or equivalent facility, and delivery of such traffic to the called party's premises." 47 C.F.R. § 51.701(d). The regulations do not define "switch."

In the FCC's view, paging providers terminate telecommunications under both the Act itself and the FCC's regulations. In the First Report and Order, the agency stated that "LECs are obligated, pursuant to section 251(b)(5) and the corresponding pricing standards of section 252(d)(2) to enter into reciprocal compensation arrangements with CMRS providers, *including paging providers,* for the transport and termination of traffic on each others' networks." First Report and Order ¶ 34 (emphasis added); *see also id.* ¶ 1008 (same); *id.* ¶¶ 1092–93 (discussing pricing rules for pager-LEC interconnection agreements; "Given the lack of information in the record concerning paging providers' costs to terminate local traffic, we have decided to [initiate further regulatory proceedings on this subject and, in the interim, direct the state commissions] to establish rates for the termination of traffic by paging providers.").

We conclude that this is a classic case for deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The statute uses, but does not define, the word "termination." The term is a technical one, contained in a statute intended to apply to a great range of technologies, both new and old. Congress expressly directed the agency to "establish regulations to implement the requirements of" the section containing the term "termination." *See* 47 U.S.C. § 251(d)(1); *see also* 47 U.S.C. § 201(b) ("The [FCC] may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this Act."). In carrying out this assignment, the FCC promulgated a regulation

---

**2.** The CPUC Commissioners do not contend that the state's sovereign immunity shields them from this action, and we do not consider the issue. *See Wisconsin Dep't of Corrections v. Schacht,* 524 U.S. 381, 118 S.Ct. 2047, 2052, 141 L.Ed.2d 364 (1998) ("Unless the State raises [sovereign immunity], a court can ignore it.").

and stated its view that, under both the statute and the agency's implementing regulation, paging companies are covered.

Pacific Bell urges that the FCC's statements conflict with both the plain meaning of the statute and the agency's own regulations. We disagree. First, Pacific Bell offers a structural argument, asserting that "the word 'termination' must denote a function performed by a local exchange service, or its equivalent as performed by another carrier," because the *reciprocal* compensation obligation respecting termination costs is located in the section applicable to LECs. Pacific Bell defeats its own argument, however, by noting that an "equivalent" function performed by another carrier may qualify as termination. The FCC has determined that paging is equivalent for this purpose.

Pacific Bell next relies on the FCC's use of the word "switch" in the definition of "termination" in 47 C.F.R. § 51.701(d). Switching, according to Pacific Bell, requires, as a technical matter, the creation of a continuous, two-way communications path between end users. If there is a disconnection before the delivery of a message (caused, for example, by a paging terminal that disconnects a caller), there is no "switch." Again, the FCC disagrees, and it is the FCC that chose the word "switch" in the first place. Moreover, as the district court pointed out, there are different kinds of switching, some of which do not require a continuous open circuit. We will not second-guess the agency on this technical matter. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) ("[B]road deference is all the more warranted when, as here, the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.") (internal quotation marks omitted).

Finally, Pacific Bell contends that the FCC's statements that paging companies are entitled to compensation as terminators of telecommunications are entitled to no deference because the statements are cursory and unreasoned. Again, we disagree. Although the FCC's statements are brief and lack elaborate analysis, those statements deliberately and unambiguously single out paging providers for special notice. The First Report and Order, while massive, presents a relatively detailed and thorough attempt to explain the FCC's decisions concerning a very difficult statute. Moreover, the FCC's statements do not appear to have been made in anticipation of any particular litigation. *Cf. Auer v. Robbins*, 519 U.S. 452, 462, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) ("There is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.").

On this technical matter, which "depend[s] upon more than ordinary knowledge respecting the matters subjected to agency regulations," the agency is entitled to deference. *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778. Congress has left a "gap" to fill, and we are not the ones to fill it. *See id.* at 843, 104 S.Ct. 2778; *cf. AT & T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 119 S.Ct. 721, 738, 142 L.Ed.2d 835 (1999) ("Congress is well aware that the ambiguities it chooses to produce in a statute will be resolved by the implementing agency.").

**B. A One-way Paging Provider Can Enter Into a Reciprocal Compensation Arrangement**

Pacific Bell's main argument is that the CPUC erred in concluding that it was required to enter into a reciprocal compensation arrangement with a paging carrier, such as Cook, that generates no traffic for termination by Pacific Bell. Such an agreement is inherently not "reciprocal," Pacific Bell contends, because compensation flows only one way. The FCC disagrees.

The key provision, aside from § 251(b)(5) itself, is § 252(d)(2)(A)(i). That provision says that a state commission shall not consider the terms and conditions for reciprocal compensation to be "just and reasonable" unless "such terms and conditions provide for the mutual and reciprocal recovery by each carrier of costs associated with the transport and termination on each carrier's network facilities of calls that originate on the network facilities of the other carrier."

The FCC has promulgated several regulations to implement those statutory provisions. First, 47 C.F.R. § 50.701(e) defines the term "reciprocal compensation":

> For purposes of [these regulations concerning reciprocal compensation], a reciprocal compensation arrangement between two carriers is one in which each of the two carriers receives compensation from the other carrier for the transport and termination on each carrier's network facilities of local telecommunications traffic that originates on the network facilities of the other carrier.

Next, 47 C.F.R. § 51.703(a) states that "[e]ach LEC shall establish reciprocal compensation arrangements for transport and termination of local telecommunications traffic with *any requesting telecommunications carrier.*" (Emphasis added.) Finally, 47 C.F.R. § 51.711(c) provides that "a state commission shall establish the *rates that licensees in the Paging* and Radiotelephone *service ... may assess* upon other carriers for the transport and termination of local telecommunications traffic." (Emphasis added.)

The FCC clearly believes that at least some compensation arrangements between LECs and paging providers constitute reciprocal compensation arrangements within the meaning of §§ 251(b)(5) and 252(d)(2)(A). As discussed above, in the First Report and Order the FCC stated several times that paging providers are entitled to enter into reciprocal compensation arrangements. Additionally, the FCC requires each LEC to establish reciprocal compensation arrangements with "*any* requesting telecommunications carrier." 47 C.F.R. § 51.703(a) (emphasis added). Most importantly, the FCC explicitly has directed the state commissions to determine the prices that paging companies may assess on other carriers for transporting and terminating telecommunications traffic. *See* First Report and Order ¶ 1093; 47 C.F.R. § 51.711(c). In reaching those conclusions, the agency was aware that paging companies originate less traffic than LECs do; it demonstrated its awareness by providing that paging-related compensation arrangements are exempt from the general requirement of "symmetrical pricing":

> We believe, with respect to interconnection between LECs and paging providers, that there should be an exception to our rule that States must establish presumptive symmetrical rates.... While paging providers, as telecommunications carriers, are entitled to mutual compensation for the transport and termination of local traffic, and should not be required to pay charges for traffic that originates on other carriers' networks, we believe that [the rationale behind our normal pricing rules may not apply].

First Report and Order ¶ 1092.

The critical question in resolving this appeal is whether the FCC's view on this question is entitled to deference. We decide that question by applying the analysis required by *Chevron.*

We first consider whether Congress has expressed its intent unambiguously through the words of the statute. *See Chevron,* 467 U.S. at 843, 104 S.Ct. 2778 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."). The Act certainly is subject to dueling interpretations-the parties present them.

Pacific Bell and its amici contend that §§ 251(b)(5) and 252(d)(2)(A)(i) compel a

conclusion that traffic and compensation must actually flow to and from both carriers for the agreement to be a "reciprocal compensation arrangement." That is the reading that the CPUC arbitrator gave the statute. *See* Arbitrator's Report at 10–11.

Pacific Bell supports this construction of the statute in several ways. First, it cites a dictionary for the definition of reciprocal: "given by each toward the other; mutual." Random House Dictionary of the English Language, The Unabridged Edition 1199 (1967). A one-way paging provider, such as Cook, gives no compensation "toward the other."

A further analytical basis for this argument is the rule of statutory construction that surplusage is to be avoided. *See American Rivers v. Federal Energy Regulatory Comm'n*, 187 F.3d 1007, 1019 (9th Cir.1999). According to Pacific Bell, Congress could have required each carrier to pay the other for any termination or transport costs incurred in completing that carrier's traffic without using the word "reciprocal."

Finally, Pacific Bell points to the passage in § 252(d)(2)(A)(i) requiring that the terms and conditions of reciprocal compensation arrangements provide for recovery "by each carrier of costs associated with the transport and termination on each carrier's network facilities of calls that originate on the network facilities of the other carrier." "Each carrier" is not recovering costs associated with transporting or terminating calls originated by the other here, because Cook originates no calls.

Cook and the CPUC Commissioners find the Act equally, but differently clear. Like the district court, these parties conclude that "reciprocal" in § 251(b)(5) means that, when traffic goes one way, a "reciprocal" obligation to pay termination compensation must go the other way. No "one-way" arrangements are allowed in

the sense that no interconnection agreement may provide for an uncompensated flow of traffic from an originator to a terminator.

Similarly, § 252(d)(2)(A)(i), according to these parties, does not require that each carrier *actually receive* termination compensation from the other. The section simply requires that the arrangement *"provide for"* the mutual recovery of any termination costs incurred by "each carrier." (Emphasis added.) Whether or not either carrier actually receives any compensation depends on whether the other carrier originates traffic. This view finds support in the Act's broad use, in the relevant provisions, of the terms "carrier" (presumably as statutory shorthand for the defined term "telecommunications carrier") and "telecommunications." Congress was aware that some telecommunications carriers provide one-way service; for example, the definition of "mobile service"- the service provided by paging providers- includes providers of "both one-way and two-way radio communication services." 47 U.S.C. § 153(27). Additionally, a one-way paging service may become two-way in the future.

█ Both readings of the statute are plausible.[3] Accordingly, we must defer to the agency's proffered interpretation if that interpretation is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778; *see also Shaar v. INS*, 141 F.3d 953, 956 (9th Cir. 1998) ("[W]e must not substitute our interpretation for a 'reasonable interpretation' made by the agency and must accept that interpretation unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'") (quoting *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778).

Pacific Bell contends that the FCC has been too inconsistent to permit deference

---

**3.** This conclusion is not surprising: "It would be gross understatement to say that the Telecommunications Act of 1996 is not a model of clarity. It is in many important respects a model of ambiguity or indeed even self-contradiction." *AT & T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 119 S.Ct. 721, 738, 142 L.Ed.2d 835 (1999).

to its supposed interpretation respecting compensation for one-way paging. *See Smiley v. Citibank (South Dakota), N.A.,* 517 U.S. 735, 742, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) (stating that, in certain circumstances, an agency's inconsistent interpretations of a statute are not entitled to deference). We disagree. The agency's regulation defining reciprocal compensation—47 C.F.R. § 51.701(e)—and its interpretative statements are easily reconciled.

In the light of § 252(d)(2)(A)(i), we read 47 C.F.R. § 51.701(e) as meaning that, *when* traffic originates with one carrier and terminates with another, the terminating carrier must receive compensation. Similarly, the FCC's statement that reciprocal compensation "mean[s] that compensation flows in both directions between interconnecting networks" simply restates the agency's view that arrangements under which a carrier receives no compensation for the traffic that it terminates are not "reciprocal." The Act forbids originating carriers from refusing to pay compensation to terminating carriers.

So understood, the FCC's statements on this subject are consistent. The agency's interpretation of "reciprocal" is a plausible and permissible interpretation of an ambiguous statutory term. Accordingly, the FCC's interpretation is entitled to deference. *See Chevron,* 467 U.S. at 843, 104 S.Ct. 2778 ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."); *Yang v. INS,* 79 F.3d 932, 935 (9th Cir.1996) ("In the face of ambiguity or Congressional silence, we should defer to the agency's considered judgment."). Under the FCC's interpretation, Cook terminates traffic originated by Pacific Bell and is entitled under 47 U.S.C. §§ 251(b)(5) and

252(d)(2)(a)(i) to compensation for performing that termination.

## CONCLUSION

We defer to the FCC's interpretation. Cook terminates traffic and Pacific Bell is required to enter a reciprocal compensation arrangement to compensate Cook for performing that termination. The interconnection agreement between Pacific Bell and Cook meets the requirements of 47 U.S.C. §§ 251 and 252. The judgment of the district court is therefore AFFIRMED.