William E. NIXON, Plaintiff–Appellant,

v.

BELMONT–HARRISON JUVENILE DISTRICT, SARGUS JUVENILE CENTER; Beth A. Oprisch, Executive Director, Defendants–Appellees.

No. 02–3768.

United States Court of Appeals, Sixth Circuit.

Sept. 7, 2004.

Walter W. Reckless, Shumaker, Loop & Kendrick, Columbus, OH, for Plaintiff–Appellant.

Rufus B. Hurst, Darrell A. Hughes, Downes, Hurst & Fishel, Columbus, OH, for Defendant–Appellee.

Before BATCHELDER and SUTTON, Circuit Judges; and BELL, District Judge.*

BATCHELDER, Circuit Judge.

Plaintiff-appellant William E. Nixon appeals from the district court's order granting summary judgment in favor of the defendants and dismissing Nixon's complaint with prejudice. For the reasons set forth below, we will AFFIRM the judgment of the district court.

## I.

Defendant Belmont–Harrison Juvenile District operates the Sargus Center, a secured juvenile detention facility serving the counties of Belmont and Harrison, Ohio. The Sargus Center is established

---

* The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

under Ohio Rev.Code § 2152.41(B), which provides for the formation of such facilities "upon the joint recommendation of the juvenile judges of two or more counties." Ohio Rev.Code 2152.41(B). Defendant Beth Oprisch serves as the executive director of the Sargus Center, a position she has held since 1995.

At all times relevant to this action, Plaintiff William E. Nixon was a full-time employee of the Sargus Center, working as a "line staff" employee. Among his duties were supervising activities and behaviors of the residents; conducting "wing checks" of the facility every 15 minutes; enforcing the facility's policies and procedures; maintaining discipline and control over the residents; and assisting in providing the residents with medication. In March 1998 Nixon underwent surgery for the removal of a colloid brain cyst that was causing severe swelling of the brain. Following the surgery, Nixon suffered severe short-term memory problems that prevented his performing the duties of his job at the Sargus Center. After exhausting his medical leave under the Family and Medical Leave Act ("FMLA") and subsequent unpaid leave of varying lengths of time, Nixon entered into a "Memorandum of Understanding" with the Sargus Center whereby Nixon was given an additional year of unpaid leave within which to return to work.

Although Nixon presented a medical release from his physician during the one-year period provided in the Memorandum of Understanding, the Sargus Center was concerned that Nixon's continuing short-term memory problems would pose safety risks to Nixon and security risks to the Center. Consistent with the terms of the Memorandum, the Center required Nixon to undergo further medical examination before he would be permitted to return to work. Nixon was then examined by three medical experts, each of whom concluded that Nixon was not medically able to return to the duties of his job at the Center. Because Nixon was not able to provide a medical release within the one-year period of the Memorandum of Understanding, the Center discharged him at the end of that period.

Nixon timely filed this action against the Belmont–Harrison Juvenile District and Beth A. Oprisch, the executive director of the Sargus Center, in both her individual and official capacities. The complaint asserted (1) claims for disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and Ohio Rev.Code. § 4112 et seq.; (2) claims under 42 U.S.C. § 1983 for retaliatory discharge in violation of First and Fourteenth Amendments of the United States Constitution and Article One, Sections Eleven and Sixteen of the Ohio Constitution;[1] and (3) state law claims for intentional infliction of emotional distress and breach of contract.

Defendants moved for summary judgment on all of Nixon's claims. The district

1. Nixon's retaliation claims stem from his filing a previous lawsuit against these defendants as well as from incidents related to his involvement in union activities. Nixon was an active member of the Health Care and Social Services Union. In October 1997, he and two co-workers sent a letter to the *Times Leader*, a local newspaper, in which they criticized defendants' actions regarding recent wage negotiations between the union and the Sargus Center. Nixon was suspended for 30 days for his involvement in sending the letter to the newspaper. He and his two co-workers brought suit in the federal district court, and the parties settled in July 1999. The settlement agreement in that case included a provision barring defendants from further retaliating against Nixon for his involvement in sending the letter to the newspaper or for his participation in that lawsuit. The district court held, and Nixon does not dispute on appeal, that he abandoned his claims based on sending the letter to the newspaper and participating in union activities.

court raised the issue of Eleventh Amendment immunity sua sponte, finding that the Sargus Center is an arm of the state and is entitled to immunity. The court therefore held that it lacked subject matter jurisdiction over the Section 1983 claims against the Sargus Center and the damages claims against Oprisch in her official capacity brought under Section 1983 and under state law. Because it had determined that the Sargus Center is an arm of the state, the district court concluded that all of Nixon's state law claims against Oprisch in her individual capacity were barred by immunity established by Ohio law.

The district court granted summary judgment to the defendants and dismissed the ADA and Ohio disability claims on their merits, holding that no reasonable juror could conclude Nixon had asked his employer for an accommodation for his disability. The court granted summary judgment to Oprisch on the Section 1983 claims for injunctive relief brought against her in her official capacity and on the Section 1983 claim for damages brought against her in her individual capacity, holding that every reasonable juror would find that Nixon would have been terminated because of his medical incapacity even if he had not filed the lawsuit that he claims was the basis for his discharge. Finally, the district court concluded that in any event, Oprisch would have been entitled to qualified immunity on the retaliatory discharge claim because Nixon's First Amendment claim is premised on the Petition Clause, his prior lawsuit did not involve a matter of public concern, and at the time of his discharge, the law was not clear as to whether the public concern limitation applied to the right to petition.

Nixon argues on appeal that the district court erred in (1) finding that the Sargus Center is an arm of the state that is entitled to Eleventh Amendment immunity; (2) granting defendants summary judgment on his ADA claims; (3) dismissing his Section 1983 retaliation claim against defendant Oprisch; and (4) holding that defendant Oprisch is entitled to qualified immunity.

## II.

■ On appeal, Nixon first argues that the Sargus Center is not the state or a state agency, and is therefore not entitled to Eleventh Amendment immunity. This issue was neither raised by the defendants nor briefed by the parties in the district court. The district court raised the matter sua sponte, and held, citing without discussion this court's unpublished opinion in *Oswald v. Lucas County Juvenile Det. Ctr.*, 1999 WL 504209, that under Ohio law, county juvenile detention centers are part of the juvenile court, which in turn is an arm of the state.

Whether the Sargus Center is an arm of the state and therefore entitled to Eleventh Amendment immunity, a question of law that we review de novo, *see Ernst v. Roberts*, 379 F.3d 373, 377 (6th Cir.2004), "hinges on whether there is potential legal liability of the state treasury to satisfy a judgment," *id.* at 381, among other things, *see S.J. v. Hamilton County*, 374 F.3d 416, 420 (6th Cir.2004). In addition to the question whether the state bears responsibility for the money judgment, factors such as, among others, the entity's status under state law, whether the entity performs a proprietary or governmental function, whether the entity has been separately incorporated, and the degree of autonomy that the entity exercises over its own operations may be considered. *Ernst*, 379 F.3d 373, 381. Here, the record contains none of this information, and the unpublished opinion in *Oswald* on which the district court relied involves a single county juvenile detention center, rather than a multi-county center such as Sargus. We

conclude that the record before us is simply insufficient to permit us to review the district court's Eleventh Amendment immunity determination.

 We need not remand the case for the factual and legal development necessary to determine whether Eleventh Amendment immunity is proper here, however, because the Supreme Court has made it clear that Eleventh Amendment immunity is a defense that the State may raise if chooses, but "unless the State raises the matter, a court can ignore it." *Wisconsin Dep't of Corrections v. Schacht,* 524 U.S. 381, 389, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998). *See also, Ernst,* 379 F.3d 373, 377 (noting that the burden of establishing Eleventh Amendment immunity is on the party asserting it, and such immunity is to be considered as an affirmative defense to jurisdiction.) The defendants in this case did not raise the issue, perhaps because they did not believe Eleventh Amendment immunity applies, and we decline to consider it further. Accordingly, we will proceed to the merits of Nixon's claims.

### III.

 The district court addressed at length the merits of the ADA[2] and Ohio law disability claims, and the merits of the Section 1983 retaliatory discharge claim against defendant Oprisch in her official capacity—seeking injunctive relief—and in her individual capacity—seeking damages, granting summary judgment to the defendants on all of those claims. After carefully reviewing the record, the applicable law, the parties' briefs and counsels' arguments, we are convinced that the district court did not err in its conclusions. Because the retaliatory discharge claims brought under the Ohio Constitution require the same analysis that the district

court applied to the Section 1983 retaliatory discharge claims, we conclude that the defendants are also entitled to summary judgment on those claims. As the district court's opinion carefully and correctly sets out the law governing the disability claims brought pursuant to the ADA, and Ohio law, and the retaliatory discharge claims brought pursuant to Section 1983 and the Ohio Constitution, and clearly articulates the reasons underlying its decision, issuance of a full written opinion by this court would serve no useful purpose. Finally, because the state law claims for intentional infliction of emotional distress and breach of contract are wholly derivative of the disability and retaliation claims, we hold that the defendants are entitled to summary judgment on those claims as well.

Accordingly, we AFFIRM the summary judgment and dismissal of the complaint.

---

2. The district court did not explain why it did not view the ADA claims against the Sargus Center and the director in her official capaci-

ty as barred by the Eleventh Amendment. *See Bd. of Trustees v. Garrett,* 531 U.S. 356, 374, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).