Charlotte CUNO, et al., Plaintiff,

v.

DAIMLERCHRYSLER, INC.,
et al., Defendant.

No. 3:00CV7247.

United States District Court,
N.D. Ohio,
Western Division.

Aug. 1, 2001.

Peter D. Enrich, Northeastern University School of Law, Boston, MA, Terry J. Lodge, Toledo, for Charlotte Cuno, Mary L. Branwen, Judith A. Pfaff, Kenneth P. Pfaff, Phoenix Earth Food Co–Op, Inc., Robert S. Brundage, Herbert H. Raschke, Carol A. Raschke, Hutton Pharmacy, Inc, Duane M. Arquette, Kim's Auto and Truck Service, Mary Ebright, Helen Czapczynski, Julie Coyle, Jean E. Kaczmarek, Kathleen Hawkins, Carrie Hawkins, Rick V. Landingham, Plaintiffs.

Charles A. Rothfeld, Erika Z. Jones, Miriam R. Nemetz, Mayer, Brown & Platt, Washington, DC, John T Landwehr, Robert J. Gilmer, Jr., Eastman & Smith, Toledo, OH, for DaimlerChrysler, Inc., defendant.

Theodore M. Rowen, Truman A. Greenwood, Spengler Nathanson, Toledo, OH, for Terry L. Glazer, Toledo Public School Dist., David Hunter, Washington Local School Dist., defendants.

Barbara E. Herring, Samuel J. Nugent, City of Toledo, Department of Law, Toledo, OH, for Carleton S. Finkbeiner, City of Toldeo, defendants.

Robert C. Maier, Attorney General of Ohio, Assistant Attorney General, Taxation Section, Sharon A. Jennings, Office of the Attorney General, State of Ohio, Columbus, OH, for Joseph T. Deters, Thomas M. Zaino, C. Lee Johnson, defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on the Defendants' motions to dismiss (Doc. Nos. 51 & 52). Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367. For the following reasons, Defendants' motions will be granted, and the case dismissed.

### BACKGROUND

The eighteen named plaintiffs in this action are challenging the legality of approximately $280,000,000 in tax benefits that were granted to Defendant DaimlerChrysler, Inc., to induce it to remain in Toledo, Ohio. On November 12, 1998, Defendants City of Toledo, Toledo Public School District, and Washington Local School District (collectively "the municipal Defendants")[1] entered into a Development Agreement with DaimlerChrysler whereby DaimlerChrysler received a ten-year exemption from taxes that otherwise would be levied on personal property first put into use at DaimlerChrysler's facility ("the property tax exemption"), and a credit against its state corporate franchise tax for certain qualifying investments ("the investment tax credit").

In Counts I and II of their second amended complaint, Plaintiffs allege that the Ohio statutory scheme permitting the property tax exemption, Ohio Rev.Code §§ 5709.62(C)(1) & 5709.631, is unconstitutional because it violates the Commerce Clause of the United States Constitution and the equal protection clause of the Ohio Constitution. In Count III, Plaintiffs allege that even if Ohio Rev.Code §§ 5709.62(C)(1) & 5709.631 are constitutional, DaimlerChrysler was not qualified for the property tax exemption. In Counts IV and V, Plaintiffs allege that the Ohio statutory scheme permitting the investment tax credit, Ohio Rev.Code § 5733.33, is unconstitutional because it violates the Commerce Clause of the United States Constitution and the equal protection clause of the Ohio Constitution.

Plaintiffs originally filed their complaint in the Lucas County, Ohio, Court of Common Pleas. Defendants removed the action pursuant to 28 U.S.C. § 1441, alleging federal question jurisdiction arising out of Plaintiffs' federal constitutional challenges to the statutes at issue. On November 11, 2000, this Court denied Plaintiffs' motion to remand.

The Defendants have filed motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] They contend that the Plaintiffs have failed to state a claim upon which relief may be granted under the Commerce Clause of the United States Constitution, the Equal Protection Clause of the Ohio Constitution, or Article XII, Section 2 of the Ohio Constitution. Further, they claim that the Plaintiffs have failed to satisfy the statutory prerequisites to make a claim of violation of Ohio Rev.Code § 5709.62. Finally, they argue that Joseph T. Deters, Treasurer of the State of Ohio, is not a proper

---

1. Plaintiffs have also named as defendants Ohio State Treasurer Joseph T. Deters, Commissioner of the Ohio Department of Taxation Thomas M. Zaino, Director of the Department of Development of the State of Ohio C. Lee Johnson, and the State of Ohio (collectively the "State Defendants"), as well as Mayor of Toledo Carleton L. Finkbeiner.

2. One motion to dismiss was filed by DaimlerChrysler, the other by the remaining defendants.

party to this suit, and that the Eleventh Amendment to the United States Constitution requires the dismissal of all state law claims brought against the state defendants. The Plaintiffs have filed responses as to each issue raised by the Defendants, and the Defendants have replied. The parties' contentions are discussed below.

## DISCUSSION

### I. Motion to Dismiss Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Westlake, supra,* at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed.2001).

### II. Dismissals by Plaintiffs' Consent

In their Memorandum in Opposition to the Defendants' Commerce Clause arguments, the Plaintiffs acknowledged that certain arguments made by the Defen-

dants are well-founded. Accordingly, the following dismissals will be made with the consent of the Plaintiffs and without further discussion:

1. Count III will be dismissed as to all Defendants;

2. Joseph T. Deters, Treasurer of the State of Ohio, will be dismissed as a Defendant with respect to all Counts of the Complaint;

3. The State of Ohio will be dismissed as a Defendant with respect to Counts I and IV;

4. Count II will be dismissed as to all Defendants to the extent that it rests on the claim that the property tax exemption does not fall within any of the categories enumerated in Article XII, § 2 of the Ohio Constitution.

### III. Eleventh Amendment Immunity

■ The State Defendants argue that the sovereign immunity granted by the Eleventh Amendment to the United States Constitution requires dismissal of Counts II and V, in which the Plaintiffs allege that the tax credit and tax exemption violate the equal protection clause of the Ohio Constitution.[3] *See Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Plaintiffs object, and contend that this Court retains jurisdiction pursuant to *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), or, in the alternative, that the State Defendants have waived the protections of sovereign immunity by consenting to the removal of this case from state court.[4]

---

**3.** The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state."

**4.** The state defendants suggest that, as an alternative to deciding the immunity question, this Court first proceed to the ultimate issue and then only return to immunity if the motion to dismiss would otherwise be denied. *See Parella v. Retirement Board of Rhode Island Employees' Ret. Sys.,* 173 F.3d 46 (1st

■ Neither of Plaintiffs' arguments are availing. *Ex Parte Young* is only available when a state official is sued in an effort to obtain injunctive relief for a violation of federal law, *see id.*, and the State Defendants have not objected to this Court's jurisdiction over any federal law claims (i.e. those in which the Plaintiffs allege that the tax credit and tax exemption violate the Commerce Clause). *Ex Parte Young* is not available where a State or state official asserts immunity to suit based on a state law (i.e. the Plaintiffs' claims of violation of the equal protection clause of the Ohio Constitution).

■■ The State Defendants have not waived their immunity through consent to removal. Sovereign immunity may be waived with state consent. *See Mixon v. Ohio*, 193 F.3d 389, 397 (6th Cir.1999) (citing *Alden*, 527 U.S. 706, 119 S.Ct. 2240, and *Seminole Tribe*, 517 U.S. 44, 116 S.Ct. 1114) In *Mixon*, the Sixth Circuit stated, "Ohio has not waived its sovereign immunity in federal court." *Mixon*, 193 F.3d at 397. Furthermore, "Ohio *only* allows a waiver of sovereign immunity by its legislature or its courts." *Id.* at 397 n. 7 (citing *Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460 (6th Cir.1982)) (emphasis added). Neither the legislature nor the courts of Ohio have made such a waiver in this case.

■ The Plaintiffs contend that waiver was effected through consent to removal. To support this proposition, they point to Justice Kennedy's concurrence in *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 393–98, 118 S.Ct. 2047, 2054–57, 141 L.Ed.2d 364 (1998) (Kennedy, J., concurring), in which the Justice cast doubt upon the propriety of allowing a state to raise the issue of Eleventh Amendment immunity following consent to removal. Absent an otherwise divided Court, the concurring opinion of a single Justice bears only persuasive weight. Without further guidance from either the Sixth Circuit or the Supreme Court, this Court must hold that consent to removal, without more, does not act as a waiver of the sovereign immunity provided by the Eleventh Amendment. *See also Gwinn Area Comty. Sch. v. Michigan*, 741 F.2d 840, 847 (6th Cir.1984) (consent to removal by state attorneys not a waiver absent legislative direction).

■ Because this case came before this Court through removal, it remains to be decided whether the claims for which the State Defendants have asserted immunity should be remanded to state court or dismissed without prejudice. The Sixth Circuit has held, "[T]he proper course is to direct the district court to remand these claims to the state court." *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 338 (6th Cir.1990). The Defendants argue that the *Metropolitan Sewer* holding was cast into doubt by *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998). That argument is well-taken. In *Schacht*, the District Court for the Western District of Wisconsin dismissed the plaintiff's claims over which it lacked jurisdiction due to the state's assertion of the Eleventh Amendment. *See id.* at 385, 118 S.Ct. at 2050. On appeal, the Seventh Circuit vacated the judgment of the District Court; the judgment of the Seventh Circuit was vacated in turn by the Supreme Court. *See id.* at

Cir.1999) (Eleventh Amendment not strictly jurisdictional and therefore may be bypassed for resolution of more simple legal issue). It appears that the Sixth Circuit has rejected this approach. *See Mixon v. Ohio*, 193 F.3d 389, 397 n. 6 (6th Cir.1999) ("[W]e must address the [Eleventh Amendment] immunity issue because it is jurisdictional."), *citing Wilson–Jones v. Caviness*, 99 F.3d 203, 206 (6th Cir.1996) ("[N]either the litigants' consent, nor oversight, nor convenience can justify a court's exercise of illegal power.")

393, 118 S.Ct. at 2054. Although the matter was not specifically addressed by the Court, it would appear that dismissal of the barred claims without prejudice was therefore the appropriate course. Since the Sixth Circuit has not reconsidered the issue of dismissal or remand in light of *Schacht*, this Court will dismiss without prejudice Counts II and V inasmuch as they are brought against the State Defendants.

## IV. Equal Protection Clause of the Ohio Constitution

Although Counts II and V will be dismissed without prejudice with respect to the State Defendants, whether either or both Counts state a claim upon which relief may be granted must still be decided with respect to the remaining Defendants. As noted in Section III, *supra*, in Counts II and V the Plaintiffs allege that the property tax exemption and the investment tax credit violate the equal protection clause of the Ohio Constitution.[5] They claim that the exemption and credit "compel[ ] a conclusion of corporate favoritism." (Pl. Mem. Opp. Eq. Prot. at 15).

 Both parties acknowledge that the Ohio and United States equal protection clauses impose identical limits on governmental classification. *See Kinney v. Kaiser Aluminum & Chem. Corp.*, 41 Ohio St.2d 120, 123, 322 N.E.2d 880, 882 (1975). The parties further agree that to withstand scrutiny a classification is only required to "rationally further a legitimate

state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992). It is the burden of the Plaintiffs in this case to "negative every conceivable basis which might support" the challenged classification. *See Heller v. Doe*, 509 U.S. 312, 320, 113 S.Ct. 2637, 2643, 125 L.Ed.2d 257 (1993) (quotation and citation omitted).

 Review of both the exemption and the credit makes abundantly clear that the purpose of their enactment was to encourage industrial investment and development in Ohio, particularly in economically troubled areas.[6] This constitutes a legitimate state interest that clearly has a rational nexus to the exemption and the credit. *See, e.g., Nordlinger*, 505 U.S. at 12, 112 S.Ct. at 2333; *Allied Stores v. Bowers*, 358 U.S. 522, 528, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959) ("[I]t has repeatedly been held and appears to be entirely settled that a statute which encourages the location within the State of needed and useful industries by exempting them, though not also others, from its taxes is not arbitrary and does not violate the Equal Protection Clause of the Fourteenth Amendment."). Even if that was not the intent of the legislature and the parties when the laws were enacted and the Development Agreement entered into, that such a reason is able to be articulated is enough. *See Nordlinger*, 505 U.S. at 28, 112 S.Ct. at 2341 (Thomas, J., concurring in part and concurring in judgment) ("Unless a classification involves suspect classes or funda-

---

5. Article I, section 2 of the Ohio Constitution states, "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly." Ohio Const. Art. I, § 2 (West 2001).

6. As pointed out by the Defendants, the Development Agreement states that the tax exemption is "in the vital and best interests of the City and the health, safety, morals, and welfare of its residents, and necessary for the purposes of carrying out the Stickney Urban Renewal Plan, elimination of blight and recurrence of blight and for the creation and preservation of jobs and employment opportunities; and to improve the economic welfare of the people of the City."

mental rights, judicial scrutiny under the Equal Protection Clause demands only a conceivable rational basis for the challenged state distinction."). Although the Plaintiffs have submitted examples of a number of cases in which various tax measures were struck down as in violation of equal protection, none are on point with the current case. *See, i.e., Allegheny Pittsburgh Coal Co. v. County Commission of Webster Cty., West Virginia,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989) (appraisal values may not be entirely arbitrary); *Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) (tax may not be applied differently to domestic and foreign corporations where both are subject to tax); *Hooper v. Bernalillo Cty. Assessor,* 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985) (classification invalid when sole purpose was to favor long-term residents); *Bush v. Gore,* 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) (suffrage case almost entirely unrelated to the instant case).

The Plaintiffs have failed to demonstrate that either the exemption or the credit violate the equal protection clause of the Ohio Constitution. Counts II and V will be dismissed.

### V. Commerce Clause of the United States Constitution

■ In Counts I and IV, the Plaintiffs claim that the property tax exemption, authorized by Ohio Rev.Code §§ 5709.62(C)(1) & 5709.631, and the investment tax credit, authorized by Ohio Rev.Code § 5733.33, are unconstitutional because they violate the Commerce Clause of the United States Constitution. In addition to giving Congress the power "to regulate commerce ... among the several States," U.S. Const., art. I, § 8, cl. 3, the Commerce Clause was crafted to "prohibit[ ] economic protectionism—that is, regulatory measures designed to benefit in-

state economic interests by burdening out-of-state competitors." *Fulton Corp. v. Faulkner,* 516 U.S. 325, 330, 116 S.Ct. 848, 853, 133 L.Ed.2d 796 (1996) (internal quotations and citations omitted).

■ To determine if a state tax violates the Commerce Clause, courts apply a four-part test. *See Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). A state tax violates the Commerce Clause if:

1. it lacks a "sufficient nexus with the State;"

2. it "discriminates against interstate commerce;"

3. it "is unfairly apportioned;" or

4. "it is unrelated to services provided by the State."

*See id.* at 277–78, 97 S.Ct. at 1078.

In the instant case, the parties do not appear to dispute that the exemption and credit at issue satisfy the "sufficient nexus," fairly apportioned, and service-related prongs of the *Complete Auto* test. The Plaintiffs do contend, however, that the exemption and credit run afoul of the Commerce Clause through discrimination against interstate commerce. This argument is without merit.

■ It is well-established that states are not precluded from enacting taxation schemes for the benefit of intrastate commerce and industry:

Our decision today does not prevent the States from structuring their tax systems to encourage the growth and development of intrastate commerce and industry. Nor do we hold that a State may not compete with other States for a share of interstate commerce; such competition lies at the heart of a free trade policy. We hold only that in the process of competition no State may discriminatorily tax the products manufac-

tured or the business operations performed in any other State.

*Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 336–37, 97 S.Ct. 599, 610, 50 L.Ed.2d 514 (1977); *see also Trinova Corp. v. Michigan Dep't of Treasury*, 498 U.S. 358, 385, 111 S.Ct. 818, 835, 112 L.Ed.2d 884 (1991) ("[It is] a laudatory goal in the design of a tax system to promote investment that will provide jobs and prosperity to the citizens of the taxing State."); *West Lynn Creamery v. Healy*, 512 U.S. 186, 199 n. 15, 114 S.Ct. 2205, 2214 n. 15, 129 L.Ed.2d 157 (1994) ("[I]t is undisputed that States may try to attract business by creating an environment conducive to economic activity, as by maintaining good roads, sound public education, or low taxes."); *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 816, 96 S.Ct. 2488, 2500–01, 49 L.Ed.2d 220 (1976) (Stevens, J., concurring) (suggesting that local industry may be encouraged through "cash subsidy, a tax credit, or a special privilege intended to attract investment capital"); *Chemical Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 351, 112 S.Ct. 2009, 2019, 119 L.Ed.2d 121 (1992) (Rehnquist, C.J., dissenting) (discussing possibility of "providing subsidies or other tax breaks to domestic industries").

 As pointed out by the Defendants, there are two categories of taxation schemes that have been rejected by the Supreme Court. The first and most obvious is a system that acts as a "protective tariff or customs duty, which taxes goods imported from other States, but does not tax similar products produced in State." *West Lynn Creamery, Inc.*, 512 U.S. at 193, 114 S.Ct. at 2211. Clearly, the property tax exemption at issue is not a tariff, since it applies only to property owned in the State of Ohio. If a potential taxpayer is unhappy with the effect of the exemption, it is free to relocate to another state and conduct all the business that it wishes without further consequence. Similarly,

the investment tax credit is not akin to a tariff, since it does not burden in the slightest the transfer of goods in interstate commerce. Instead, it is available equally to businesses regardless of their initial location, so long as they increase the amount of their Ohio investment.

 The second inappropriate scheme involves discriminatory taxation based on proportion of a business's activity that is carried on within a state as compared to business done in other states. The paradigmatic example of this type of scheme is the New York law found unconstitutional in *Westinghouse Elec. Co. v. Tully*, 466 U.S. 388, 104 S.Ct. 1856, 80 L.Ed.2d 388 (1984). In *Westinghouse*, the Supreme Court addressed a New York law that taxed corporate income but returned a portion of that tax as a credit based on the proportion of total business activity conducted in New York. *Id.* at 393–94, 104 S.Ct. at 1860. This is similar to the credit and exemption schemes currently at issue here, since an increase in activity in Ohio could increase the credit and exemption amount; however, the *Westinghouse* credit had one crucial difference: an increase in activity conducted outside New York would *decrease* the amount of the credit. *See id.* at 400–01, 104 S.Ct. at 1864–65. Such is obviously not the case here, where neither the credit nor the exemption varies with increased activity outside Ohio.

Notwithstanding Plaintiff's innovative arguments to the contrary, the property tax exemption and investment tax credit at issue here do not "discriminate against interstate commerce" in either of the well-established ways that would lead to invalidation under the Commerce Clause. Finding either scheme unconstitutional would therefore require this Court to violate the clear mandate of Supreme Court precedent, which is something, of course, that this Court will not do. Accordingly,

Counts I and IV will be dismissed for failure to state a claim upon which relief may be granted.

### CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Doc. Nos. 51 & 52) will be granted, and the case dismissed.

IT IS SO ORDERED.

### *JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendants' motions to dismiss (Doc. Nos. 51 & 52) are Granted;

FURTHER ORDERED that Counts II and V of the Complaint are Dismissed without prejudice as to Defendants Commissioner of the Ohio Department of Taxation Thomas M. Zaino, Director of the Department of Development of the State of Ohio C. Lee Johnson, and the State of Ohio;

FURTHER ORDERED that Counts II and V of the Complaint are Dismissed with prejudice with respect to Defendants Ohio State Treasurer Joseph T. Deters, Mayor of Toledo Carleton L. Finkbeiner, the City of Toledo, Toledo Public School District, Washington Local School District, and DaimlerChrysler, Inc.;

FURTHER ORDERED that Counts, I, III, and IV of the Complaint are dismissed with prejudice as to all Defendants.