**Sam SLOAN, Plaintiff,**

v.

**Hoainhan "Paul" TRUONG, Zsuzsanna "Susan" Polgar, Joel Channing, William Goichberg, The United States Chess Federation, Bill Hall, Herbert Rodney Vaughn, Gregory Alexander, Frank Niro, Grant Perks William Brock, Randall Hough, Randy Bauer, Jim Berry, Texas Tech University, and The United States of America, Defendants.**

**No. 07 Civ. 8537(DC).**

United States District Court,
S.D. New York.

Aug. 28, 2008.

Sam Sloan, Bronx, NY, pro se.

Greg Abbott, Esq., Attorney General of Texas, by Scot M. Graydon, Esq., Assistant Attorney General, Austin, TX, for Defendant, Texas Tech University.

Michael J. Garcia, Esq., United States Attorney for the Southern District of New York, by Emily E. Daughtry, Esq., Special Assistant United States Attorney, New York, NY, for Defendant, United States of America.

Handler & Goodman, LLP, by Arthur M. Handler, Esq., New York, NY, Law Office of Patrick M. O'Brien, by Patrick M. O'Brien, Esq., Park Ridge, IL, for Defendant, William Brock.

Nixon Peabody, LLP, by Joseph J. Ortego, Esq., Jericho, NY, for Defendants, Susan Polgar and Paul Truong.

Proskauer Rose, LLP, by Jeremy M. Brown, Esq., Newark, NJ, for Defendants, United States Chess Federation, Joel Channing, William Goichberg, Bill Hall, Herbert Rodney Vaughn, Gregory Alexan-

der, Grant Perks, Randall Hough, Randy Bauer, and Jim Berry.

## MEMORANDUM DECISION

CHIN, District Judge.

In this case, *pro se* plaintiff Sam Sloan accuses certain members of the United States Chess Federation (the "USCF") of posting thousands of obscene messages under his name on an internet discussion forum (the "Issues Forum"), and propagating a sordid array of rumors that purportedly caused him to lose his bid for re-election to the USCF Executive Board (the "Board"). Sloan seeks $20 million in damages, reinstatement to the Board, and other injunctive relief, including a court order directing the Department of Justice ("DOJ") to oversee a new round of Board elections.

Defendants move to dismiss the case pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(2), and 12(b)(6). For the reasons that follow, the motion is granted and the complaint is dismissed for lack of subject matter jurisdiction.

## BACKGROUND

### A. Facts

The facts are drawn principally from the complaint, the allegations of which are assumed to be true for the purposes of these motions. As there is a challenge to the existence of subject matter jurisdiction, the Court also considers facts relevant to the jurisdictional question, set forth in affidavits submitted by the parties.

### 1. The Parties

Sloan is an investigative "chess journalist" and a member of the USCF. (Compl.¶¶ 7, 10). He sat on the USCF Board from 2006–2007, before losing his bid for re-election the following year. (Id. ¶ 10).

Defendants consist primarily of certain USCF members, including past and present officers of the Board. (Id. ¶¶ 11-42). Among them are Susan Polgar and Paul Truong, Sloan's opponents in the 2007 Board election, who purportedly "engaged in a wide-ranging disinformation campaign to discredit their rivals." (Id. ¶¶ 3–4). Polgar sits on the faculty at Texas Tech and was elected over Sloan to a four-year term on the Board in 2007. (Id. ¶¶ 8, 16). Truong, Polgar's husband, also is on the faculty at Texas Tech, and won election to the Board in 2007. (Id. ¶¶ 17–18).

The complaint also names as defendants Texas Tech, the USCF, the United States, and numerous USCF members, described collectively as "an entourage" of "supporters [of Polgar and Truong] and sycophants who have become known as 'Polgarites' or the 'Polgaristas.'" (Id. ¶ 19). The majority of the individually named defendants serve, or have previously served, on the Board.

### 2. The "Fake Sam Sloan" Postings

The Issues Forum functions as an online discussion board, providing USCF members with the means by which to debate and post opinions on matters affecting the chess community. (Id. ¶ 13). Beginning June 2005, a series of combative postings attributed to Sloan appeared on the Issues Forum.[1] (Id. ¶ 44). The postings, which debuted as Sloan was running for election to the Board, sharply, and often profanely, attacked various candidates and Board members, including then-USCF President Beatriz Marinello. (Id. ¶¶ 44–49). Even

---

1. The postings appeared to originate from a variety of email addresses bearing Sloan's name or otherwise attributed to Sloan, including samsloan@usa.com, samsloan@ ishiipress.com, sloan@journalist.com, sloan@ whocares.com, and whocares@registered nurses.com. (Id. ¶ 50).

after Sloan lost the 2005 election, the postings continued, varying in length and style, but repeatedly disparaging Marinello and castigating select USCF members. (*Id.* ¶ 50).

In 2006, Sloan successfully ran for election to the Board and, upon securing a seat, wrote an open letter to the Board, accusing Truong of authoring "Fake Sam Sloan" postings to discredit Sloan and other chess rivals. (*Id.* ¶ 50). Asserting that "Truong had the knowledge, the resources, the motivation and the capability to perpetuate this hoax," Sloan lobbied Board members William Goichberg and Joel Channing to launch an investigation into the "real" identity of the "Fake Sam Sloan," and in particular, to determine whether the IP addresses corresponding to the offending messages could be traced back to Polgar and Truong. (*Id.* ¶ 52). Rather than comply, Goichberg and Channing reprimanded and "publicly censured" Sloan for his insistence on investigating fellow Board members. (*Id.*).

### 3. *Accusations of Sexual Impropriety with Minors*

In addition to the "Fake Sam Sloan" postings, from 2005 to 2007, various USCF members posted "accusations that Plaintiff [wa]s a child molester, a pornographer and a purveyor of 'kiddie porn.'" (*Id.* ¶ 62). Among the repeat posters, the complaint asserts, the "main purveyor" was William Brock, who "continued to post to other public forums ... including even on the Wikipedia Encyclopedia where he listed Sloan under the category of 'child molesters.'" (*Id.* ¶ 63). The postings often alluded, in explicit terms, to Sloan's alleged sexual activity with minors.[2] Adding to the allegations of sexual impropriety, shortly after the 2006 election, Polgar declared that Sloan had "asked to sleep with her" in 1986, while she was still a minor. (*Id.* ¶ 55). The Polgar accusation spurred further debates between Sloan and the Board, and despite Sloan's denial of wrongdoing, culminated in yet another censure. (*Id.* ¶¶ 56–60).

### B. *Prior Proceedings*

After losing the 2007 Board election, Sloan commenced this action on October 2, 2007, "to redress identity theft, impersonation, election fraud, accounting fraud, insider self-dealing and other insider wrong doing in connection with the United States Chess Federation". (*Id.* ¶ 1).[3] In particular, the complaint charged Truong and Polgar with violating "47 USC § 223(h)(1) by sending over the Internet thousands of obscene messages likely to be read by

---

2. As examples, the complaint cites postings with the subject headings: "Sam Sloan soliciting 8 year old girls," "Actions against a child rapist Sam Sloan," "Actions against Sam Sloan for molesting children," "Sam Sloan went down on a 12 year old Japanese girl." (*Id.* ¶ 5). The complaint also states that various Board members publicized "the well-known fact that in 1992 Sloan was convicted in a child custody case in Virginia involving his daughter" to further disparage him. (*Id.* ¶ 24; *see* Pl. Aff. in Opp. to MTD on Fed. Question Issue ¶¶ 28–29).

3. Sloan is no stranger to litigation, as he has been engaged in litigation at all levels of state and federal court. *See, e.g., S.E.C. v. Sloan,* 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978); *Sloan v. Murphy,* 15 F.3d 1089, 1994 WL 32618 (9th Cir.1994); *Sloan v. Nixon,* 60 F.R.D. 228 (S.D.N.Y.1973) (suing to enjoin President Nixon from continuing in office); *Matter of Sloan v. Graham,* 10 A.D.3d 433, 780 N.Y.S.2d 739 (2d Dep't 2004) (petitioning to designate himself as a candidate for the 2004 Republican Party primary election). Sloan has also unsuccessfully appealed orders of protection issued against him on behalf of his family for "disorderly conduct and two separate offenses of harassment in the second degree." *See Matter of Rankoth v. Sloan,* 44 A.D.3d 863, 844 N.Y.S.2d 357 (2d Dep't 2007).

children while ... impersonating Plaintiff and other well known chess personalities." (*Id.* ¶ 3).

All defendants moved to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. The individually named defendants additionally moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2), and Texas Tech moved to dismiss under Rule 12(b)(6) for failure to state a claim.

## DISCUSSION

The complaint alleges that "[j]urisdiction is based on diversity of citizenship, federal questions, election fraud and the constitution and laws of the United States." (*Id.* ¶ 2). Accordingly, I consider whether Sloan has shown that this Court has subject matter jurisdiction over this action. Construing plaintiff's *pro se* complaint liberally, I consider three possible grounds for subject matter jurisdiction: (1) the United States is named as a defendant; (2) diversity jurisdiction; and (3) federal question jurisdiction. I consider each ground in turn, after I first discuss the standards generally applicable to Rule 12(b)(1) motions. Because I conclude that the Court lacks subject matter jurisdiction over this action, I do not reach the other prongs of defendants' motions.

### A. 12(b)(1) Motions to Dismiss

■ In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), federal courts "need not accept as true contested jurisdictional allegations." *Jarvis v. Cardillo,* No. 98 Civ. 5793(RWS), 1999 WL 187205, at *2 (S.D.N.Y. Apr.6, 1999). Rather, a court may resolve disputed jurisdictional facts by referring to evidence outside the pleadings, such as affidavits. *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir.2000); *Filetech S.A. v. France Telecom S.A.,* 157 F.3d 922, 932 (2d Cir.1998). As the party

"seeking to invoke the subject matter jurisdiction of the district court," *Scelsa v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir.1996), the plaintiff must demonstrate by a preponderance of the evidence that there is subject matter jurisdiction. *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005). Though "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," *Guadagno v. Wallack Ader Levithan Assocs.,* 932 F.Supp. 94, 95 (S.D.N.Y.1996), a court should " 'constru[e] all ambiguities and draw[ ] all inferences' in a plaintiff's favor." *Aurecchione,* 426 F.3d at 638 (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)).

### B. United States as Defendant

Although Sloan does not specifically assert the involvement of the United States as a basis for subject matter jurisdiction, district courts have original jurisdiction over certain civil actions where the United States is named as a defendant. *See, e.g.,* 28 U.S.C. § 1346(a) (certain contract actions), (b) (certain tort actions). Here, as Sloan has named the United States as a defendant, I consider whether the Court has subject matter jurisdiction by virtue of that fact.

■ It is well-settled that the United States is protected from suit by the doctrine of sovereign immunity. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). Hence, the United States can be sued only when it consents to be sued and "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* at 538, 100 S.Ct. 1349.

■ Here, plaintiff has not articulated a legal theory for suing the United States, nor has he identified any statute that would permit him to sue. He seeks, without citation of any legal authority, to com-

pel DOJ to "supervise a new election" for the Board. While the claim could be construed as a claim for mandamus under 28 U.S.C. § 1361, the complaint does not assert sufficient facts to render a mandamus claim against the United States plausible. First, such claims may be brought only against an officer, employee, or agency of the United States, 28 U.S.C. § 1361, and here Sloan has sued only the United States itself rather than any federal officer or agency. Second, even assuming Sloan named a federal officer or agency, he has not alleged—nor could he—that he has a "clear right" to have DOJ supervise a board election of an association such as the USCF, or that DOJ has a "plainly defined and peremptory duty" to perform that act. *See Anderson v. Bowen,* 881 F.2d 1, 5 (2d Cir.1989). Hence, he does not meet the requirements for mandamus relief. Even when a party specifically cites § 1361 (and Sloan does not), the district court lacks jurisdiction when the requirements for mandamus are not met. *See Sprecher v. Graber,* 716 F.2d 968, 973 (2d Cir.1983); *City of Milwaukee v. Saxbe,* 546 F.2d 693, 700 (7th Cir.1976).

Accordingly, the Court lacks subject matter jurisdiction over the claims against the United States, and these claims are therefore dismissed. The assertion of claims against the United States thus is not a basis for subject matter jurisdiction in this case.

### C. *Diversity Jurisdiction*

▪ Under 28 U.S.C. § 1332(a), the federal district courts have original jurisdiction over all civil actions where there is diversity of citizenship between the parties

and "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(1). With respect to the "diversity" requirement, "[a] case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State." *Wis. Dep't of Corr. v. Schacht,* 524 U.S. 381, 388, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998).

▪ Here, diversity jurisdiction does not exist for Sloan has failed to allege, much less prove, complete diversity. On its face, the complaint asserts that Sloan "resides" in New York and that defendant Goichberg "resides in Arcadia, California near the Santa Anita Race Track when the horses are running and in New York when the Mets are playing and spends the rest of his time moving about the country." (Compl.¶ 22). Because the complaint fails to identify either state as Goichberg's "domicile," it fails to properly allege subject matter jurisdiction. Moreover, Goichberg has submitted ample evidence to show that he is a "citizen" of New York for the purposes of diversity jurisdiction, including: the deed to his house in Orange County, New York; property tax records for his New York residence; and affidavits attesting that he votes, pays taxes, and resides exclusively in New York. (*See* Goichberg Aff. & Suppl. Aff.). In contrast, Sloan offers only speculation as he fails to offer any evidence to controvert Goichberg's specific and concrete evidence.[4] As the complaint fails to identify Goichberg as a "citizen" of any State, and I find on the incontrovertible evidence that

---

**4.** In his opposition, Sloan asserts, among other things, that he has been unable to find Goichberg's home on "google maps," that Goichberg never answers the phone when Sloan calls him at his New York phone number, that "Goichberg lives a vagabond life," and that, as of Sloan's opposition, Goichberg

had been in Southern California for four months. (Pl. Aff. in Opp. to MTD on Diversity Issue ¶¶ 7–14). Even here, however, Sloan neither claims that Goichberg is a "citizen" of another state nor offers any evidence to that effect.

Goichberg is a citizen of New York for these purposes, the Court does not have diversity jurisdiction over the matter.

### D. *Federal Question Jurisdiction*

■ Federal courts also have jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action does not arise under federal law for jurisdictional purposes, however, simply because it involves a federal statute. As the Supreme Court recently reiterated, "a case 'aris[es] under' federal law within the meaning of § 1331 ... if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. 677, 690, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (citation omitted).

■ Even liberally construed, Sloan fails to present a federal question sufficient to confer subject matter jurisdiction on this Court. While Sloan grounds jurisdiction on the "constitution and laws of the United States," the complaint makes no reference to violations of Sloan's constitutional rights, nor does it specify which constitutional provisions are implicated. Nor does Sloan cite any statutory authority that supports his claims of "election fraud" and demands for relief. Indeed, the only statute Sloan references with respect to the internet postings—the Com-

munications Decency Act, 47 U.S.C. § 223—is a criminal statute that prohibits the making of "obscene or harassing" telecommunications, but creates no private right of action.[5] *See Ghartey v. Chrysler Credit·Corp.,* No. CV–92–1782 (CPS), 1992 WL 373479, at *5 (E.D.N.Y. Nov.23, 1992).

The complaint recites a laundry list of additional grievances—including that Goichberg "refused to put the name and ID Number of Bobby Fischer on the USCF website"[6]; the Board's decision to move to Tennessee did not meet "the legal requirements" necessary for "a not-for-profit corporation to bring about such a major move"; and the Board's "refus[al] to appoint Sloan as a liaison to any committee ... denied [him] the influence that a board member is entitled to have"—without providing sufficient detail as to how any of these grievances amount to federal claims. Instead, the complaint largely interweaves purported "facts" with Sloan's own subjective rantings and commentary about defendants and their alleged shortcomings. For the most part, these are simply personal, vindictive, and nonsensical attacks that do not belong in a pleading filed in a judicial proceeding.

■ Sloan's bare assertion that the complaint raises "a great abundance of federal questions" (Pl. Aff. in Opp. to MTD on Fed. Question Issue ¶ 2) does not suffice to invoke the Court's jurisdiction, nor does his blanket demand for intervention by DOJ. As to Sloan's assertion that Texas

---

**5.** The complaint cites to § 223(h)(1), but that specific provision merely defines the term "telecommunication device" as it pertains to the rest of the section. 47 U.S.C. § 223(h)(1)

**6.** In its only other statutory reference, the complaint broadly suggests that the USCF refused to recognize Fischer as a member "because Fischer is anti-Semitic" and that in so doing, the organization violated 42 U.S.C. § 1983 (adding that Fischer's status as a "fu-

gitive from justice" was irrelevant to his membership as "the· USCF has 600 prison members, some of whom are psychopathic mass murderers"). (*Id.* ¶ 85). Sloan does not claim to have standing to vindicate Fischer's rights and the Court notes that Fischer died in January 2008, after the complaint had been filed. Moreover, clearly the USCF—a private not-for-profit organization—does not act under "color of law."

Tech "has allowed Polgar and Truong to use the computers of the University to impersonate Sam Sloan," that claim is also dismissed because the complaint fails to allege that Texas Tech, a state institution, has waived sovereign immunity with respect to such claims. *See United States v. Texas Tech Univ.,* 171 F.3d 279, 289 (5th Cir.1999) ("The Eleventh Amendment cloaks Texas Tech University ... with sovereign immunity as [a] state institution[ ].").

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are granted and the complaint is dismissed with prejudice and with costs. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.